**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

**IN AND FOR NEW CASTLE COUNTY**

|                           |     |                        |
| ------------------------- | --- | ---------------------- |
| STATE OF DELAWARE,        | )   |                        |
|                           | )   |                        |
| Plaintiff,                | )   |                        |
|                           | )   |                        |
|                           | )   |                        |
| v.                        | )   | Cr. ID No. 1302011427  |
|                           | )   |                        |
| ANDRE T. DUBOSE,          | )   |                        |
|                           | )   |                        |
| Defendant.                | )   |                        |
|                           | )   |                        |

Submitted: October 30, 2015
Decided: November 4, 2015

**COMMISSIONER'S REPORT AND RECOMMENDATION THAT
DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF
SHOULD BE DENIED IN PART AND GRANTED IN PART.**

Brian J. Robertson, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Andre T. Dubose, James T. Vaughn Correctional Center, Smyrna, Delaware, *pro se.*

PARKER, Commissioner

This 4th day of November 2015, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

## BACKGROUND AND PROCEDURAL HISTORY

1. On July 1, 2014, a Superior Court jury found Defendant Andre T. Dubose guilty of three counts of Burglary Second Degree, two counts of Possession of a Firearm by a Person Prohibited, one count of Possession of Ammunition by a Person Prohibited, three counts of Conspiracy Second Degree, three counts of criminal mischief, two counts of theft of a firearm, two counts of theft, and one count of Possession of Burglar's Tools or Instruments Facilitating Theft.

2. On March 3, 2015, Defendant Dubose was sentenced as a habitual offender, pursuant to 11 *Del. C.* § 4214(a), to a total of 52 years and 90 days at Level V, suspended after 39 years and 90 days for deceasing levels of probation.

3. Defendant Dubose had a number of qualifying predicate convictions rendering him a habitual offender including a conviction for receiving stolen property in 2003, a conviction for assault second degree and conspiracy second in 2006, and a conviction for carrying a concealed deadly weapon in 2011.[1]

4. Defendant Dubose did not file a direct appeal to the Delaware Supreme Court.

5. In the subject action, Defendant Dubose contended that he was a "Moorish-American National and a Sovereign State Citizen of the Delaware Republic." He did not want to represented by counsel. He claimed not to be subjected to the laws of the United

---

[1] Superior Court Docket Nos. 70 and 71; October 3, 2014 Sentencing Transcript, at pgs. 5-7.

States. He also claimed that the Superior Court did not have the authority to preside over the subject charges.[2]

6.    The subject charges, and resulting convictions, stemmed from three different residential burglaries that Defendant committed in New Castle County, State of Delaware, in February 2013, over a span of about 2 weeks. Among the property taken in the burglaries were two firearms, both of which were in Defendant's possession.[3] Also in Defendant's possession was jewelry taken during the burglaries, an iPad belonging to one of the victim's at issue, and other property stolen during the burglaries.[4]

7.    On April 8, 2014, the day Defendant's case was set for trial, Defendant's trial counsel made an oral motion to withdraw as counsel. Defendant was claiming that he was not subject to the laws of the United States, and that his trial counsel, along with the prosecutor and judge, were going to be sued for $6 million dollars per day for the continued prosecution of the charges against him.[5]

8.    On April 8, 2014, the court had a colloquy with Defendant as to whether he wanted to represent himself. Defendant's answers were largely non-responsive. Defendant continued to purport to be a Moorish national and his exchanges with the court were couched in the verbiage of the Moorish movement.[6] Specifically, the colloquy included:

        THE COURT:        Are you ready for trial?

---

[2] See, Superior Court Docket No. 58- Defendant's letter dated April 28, 2014 to the court; Superior Court Docket No. 61-Affidavit of Sovereignty filed by Andre Trevon Dubose-El.
[3] May 9, 2014 Transcript of Status Conference, at pgs. 15-16.
[4] See, October 3, 2014 Sentencing Transcript, at pgs. 7-8.
[5] April 8, 2014 Transcript of the Call of the Calendar, at  pgs. 3-4, 7; See also, Superior Court Docket No. 58- Defendant's letter dated April 28, 2014 to the court; Superior Court Docket No. 61-Affidavit of Sovereignty filed by Andre Trevon Dubose-El.
[6] April 8, 2014 Transcript of the Call of the Calendar, at pgs. 5-8.

DEFENDANT:      For the record, my name is irrelevant.  I believe you are a public servant.[7]

********************************************************************

THE COURT:      Andre, are you ready for trial?

DEFENDANT:      With all prejudice.

THE COURT:      I don't understand what that means?

DEFENDANT:      UCC1 dash 207.[8]

********************************************************************

THE COURT:      So, you are ready for trial?

DEFENDANT:      I reserve my rights not to be compelled to perform on any contract that I did not enter knowingly, intelligently and voluntarily.

THE COURT:      Well, you are before the court on several very serious charges, okay, and an attorney has been provided to represent you, do you understand?  . . .

DEFENDANT:      All prejudice - -

THE COURT:      I don't understand that answer.  I am asking for a yes or no.  Do you understand an attorney has been provided to represent you; yes or no?

DEFENDANT:      I don't have no attorney.

THE COURT:      Are you representing yourself; yes or no?

DEFENDANT:      Propria persona san jury.

---

[7] April 8, 2014 Transcript of the Call of the Calendar, at pg. 5.
[8] April 8, 2014 Transcript of the Call of the Calendar, at pgs. 5-6.

3

| THE COURT: | That means you want to represent yourself, Andre? |
| DEFENDANT: | Propria persona - -[9] |

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

| THE COURT: | . . . Do you intend to represent yourself for this trial? You have to tell me yes or no? |
| DEFENDANT: | He made me answer. |
| THE COURT: | Repeat your answer; yes or no? |
| DEFENDANT: | Prejudice, UCC1 dash 207.[10] |

9.    On April 8, 2014, following the colloquy between the court and Defendant, the court continued the trial date and granted Defendant's trial counsel's motion to withdraw as counsel.[11]

10.    By letter dated April 8, 2014, following the court proceeding, the State requested that this case be specifically assigned to a judicial officer. The State explained that Defendant faced a habitual offender sentence of 40 years-to-life if convicted of the charges in the indictment. Defendant was, of course, copied on the State's letter to the court.[12]

11.    This case was specially assigned to Superior Court Judge Davis for all purposes until final disposition.

---

[9] April 8, 2014 Transcript of the Call of the Calendar, at pgs. 6-7.
[10] April 8, 2014 Transcript of the Call of the Calendar, at pg. 7.
[11] See, Superior Court Docket No. 45.
[12] See, Superior Court Docket No. 49, State's April 8, 2014 letter to the court.

12.     On May 9, 2014, the court held a status conference on this case. At the status conference, the court engaged in a colloquy with Defendant to determine whether his waiver of the right to counsel was knowing, voluntary and intelligent.[13]

13.     During the colloquy, Defendant represented to the court that he felt competent to represent himself.[14] The court provided Defendant with a copy of the Criminal Rules of Procedure and the Rules of Evidence.[15] The court explained that the charges were serious charges and carried minimum mandatory time.  The court explained that Defendant would be up against a law-trained prosecutor, a good law-trained prosecutor, who knew the Rules of Evidence and the Rules of Procedures and had picked juries before.  The court explained to Defendant the jury selection process and how criminal trials proceed. The court also explained trial protocol.[16]

14.     The court explained to Defendant the State's burden of proof, how testimony and evidence is to be presented at trial, how witnesses are examined and cross-examined, how objections are made, and the types of objections that are commonly made.[17] The court addressed the lack of possible defenses to the charges and potential mitigating circumstances.[18] The parties discussed the discovery already provided to Defendant and the additional discovery that was to be provided.[19]

15.     Defendant expressly represented to the court that he would follow the Delaware Rules of Evidence and the Delaware Rules of Criminal Procedure.[20]  Defendant expressly represented to the court that he realized he may be hampered in presenting his best

---

[13] May 9, 2014 Transcript of Status Conference, at pgs. 23-66.
[14] May 9, 2014 Transcript of Status Conference, at pgs. 23.
[15] May 9, 2014 Transcript of Status Conference, at pgs. 24, 55-57.
[16] May 9, 2014 Transcript of Status Conference, at pgs. 24-35, 40-66.
[17] May 9, 2014 Transcript of Status Conference, at pgs. 24-35, 40-66.
[18] May 9, 2014 Transcript of Status Conference, at pgs. 38-40.
[19] May 9, 2014 Transcript of Status Conference, at pgs. 59-66.
[20] May 9, 2014 Transcript of Status Conference, at pg. 35-36.

defense by his lack of knowledge of the law, and by the fact that he doesn't know all of the nuances of the law, and because he is not law trained.[21]

16. Defendant expressly represented to the court that he understood that the effectiveness of his defense may be diminished by his dual rule as both an attorney and as the accused. Defendant represented that he understood the nature of the charges made against him and the range of allowable punishments under each of those charges.[22]

17. Defendant represented that his trial counsel had discussed the State's offered plea agreement with him, went over all the charges, and discussed the possible sentences if convicted of the charges.[23] The offered plea agreement specially provided that the State would seek sentencing as a habitual offender, pursuant to 11 Del.C. § 4214(a), given Defendant's previous convictions.[24] Defendant also represented that he understood the statutory offenses included within the charges.[25]

18. Defendant represented himself at trial and following a four day Superior Court jury trial he was found guilty of all seventeen indicted charges.

19. At sentencing, the court noted that having presided over the trial and observing the pre-trial statements made by Defendant to the police and having observed how Defendant comported himself in the past and during trial, it was apparent that the positions and arguments Defendant made during the pretrial process that he had some religious right or sovereign soul or U.S.C. right to do anything, was insincere.[26] Defendant had, in fact, been represented by counsel in his previous predicate criminal

---

[21] May 9, 2014 Transcript of Status Conference, at pgs. 35-36.
[22] May 9, 2014 Transcript of Status Conference, at pgs. 36-37.
[23] May 9, 2014 Transcript of Status Conference, at pgs. 37-38.
[24] See, Superior Court Docket No. 8, Offered Plea Agreement which was rejected by Defendant on July 22, 2013; Superior Court Docket No. 43, Offered Plea Agreement which was rejected by Defendant on April 8, 2014.
[25] May 9, 2014 Transcript of Status Conference, at pgs. 36-37.
[26] October 3, 2014 Sentencing Transcript, at pgs. 25-27.

6

actions. Defendant had not asserted the positions taken during pre-trial to the police after he was caught and was attempting to mitigate the charges against him. Moreover, Defendant registered his vehicle in the State of Delaware and accepted the sovereignty of the State of Delaware when it helped him but claimed not to accept the sovereignty of the State when it did not help him.[27]

## DEFENDANT'S RULE 61 MOTION

20.     On June 24, 2015, Defendant filed the subject motion for postconviction relief.[28] In the subject motion, Defendant raises two claims:

1)      Defendant claims that his waiver of his right to counsel at trial was uninformed.  Defendant contends that he was "forced to proceed *pro se* without being advised of the hazardous pitfalls possible and technical problems he could encounter in acting as his own attorney." and

2)      Defendant claims that he did not voluntarily or knowingly waive his right to counsel on direct appeal and was, therefore, "constructively deprived" of a direct appeal in this case.

### Claim One:  Defendant Knowingly Waived His Right to Counsel at Trial

21.     Defendant's first claim, that his waiver of his right to counsel at trial was uninformed, is without merit.

22.     It is well-established that criminal defendants have a constitutional, Sixth Amendment, right to waive counsel and continue *pro se* if they do so knowingly, intelligently and voluntarily.[29]

---

[27] October 3, 2014 Sentencing Transcript, at pgs. 25-27.
[28] Superior Court Docket Nos. 79 & 80.
[29] *Smith v. State,*  996 A.2d 786, 789-790 (Del. 2010).

7

23.     A determination of whether of a defendant has intelligently waived the right to counsel at trial depends upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the defendant.[30]

24.     Before a trial court may permit a defendant to represent himself, the court must determine that the defendant made a knowing and voluntary waiver of his constitutional right to counsel and the court must inform the defendant of the risks inherent in going forward in a criminal trial without the assistance of legal counsel.[31]

25.     In making the determination as to whether a defendant's waiver of counsel is knowingly, intelligently and voluntarily made, the trial court should consider the defendant's background, experience and conduct.  The court should also advise the defendant that:  1) he will have to conduct his defense in accordance with the rules of evidence and criminal procedure; 2) he may be hampered in presenting his best defense by his lack of knowledge of the law; 3) the effectiveness of his defense may well be diminished by his dual role as attorney and accused; 4) the nature of the charges; 5) the statutory offenses included within them; 6) the range of allowable punishments there under; 7) possible defenses to the charges and circumstances in mitigation thereof; and 8) all other facts essential to a broad understanding of the whole matter.[32]

26.     The difficulty of establishing the existence of an adequate waiver of the right to counsel does not, however, diminish a court's responsibility to scrupulously honor an unequivocal request to proceed *pro se.*[33]

---

[30] *Smith v. State,* 996 A.2d 786, 789-790 (Del. 2010).
[31] *Smith v. State,* 996 A.2d 786, 789-790 (Del. 2010).
[32] *Smith v. State,* 996 A.2d 786, 789-790 (Del. 2010).
[33] See, *Stigars v. State,* 674 A.2d 477, 479-480 (Del. 1996).

27. In the subject action, the record reflects that Defendant Dubose was adamant in his refusal to be represented by counsel. His request to proceed *pro* se was unequivocal. In fact, Defendant threatened to sue his court appointed counsel for $6 million per day as a result of the continued prosecution of the case, which, of course, had a chilling effect on the attorney/client relationship between Defendant and his appointed counsel.

28. Although Defendant now contends his decision to represent himself was not informed the record in this case establishes to the contrary. The record reflects that Defendant was adamant in his desire to represent himself. The record reflects that Defendant was provided with a copy of the rules of evidence and rules of criminal procedure and agreed to comply with them. The record reflects that Defendant knew that he may be hampered in presenting his best defense by his lack of knowledge of the law.

29. The record reflects that Defendant knew that the effectiveness of his defense could well be diminished by his dual role as attorney and accused. The record reflects that Defendant was aware of the nature of the charges, the statutory offenses included within them, and the penalties that he was facing if convicted. The record reflects that any potential defenses (or the lack thereof), and circumstances in mitigation (or the lack thereof), were discussed with Defendant. The record reflects that other trial considerations were also discussed with Defendant.

30. The record reflects that Defendant was informed of the risks inherent in going forward in a criminal trial without the assistance of legal counsel. In the subject case, Defendant was adequately advised of the dangers of self-representation and he knowingly and intelligently waived his Sixth Amendment right to counsel. Defendant's claim that his waiver of counsel at trial was uninformed is without merit.

9

**Claim Two: Defendant Did Not Knowingly Waive His Right to Direct Appeal**

31. Defendant claims that he did not voluntarily or knowingly waive his right to counsel on direct appeal and was, therefore, "constructively deprived" of a direct appeal in this case.

32. Superior Court Criminal Rule 32(a)(2) provides, in relevant part, that "[a]fter imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise a defendant who is not represented by counsel of the defendant's right to appeal and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in *forma pauperis*."

33. In the subject action, the court did not advise Defendant after imposing the sentence in this case of his right to appeal and of his right to apply for leave to appeal in *forma pauperis* if not able to pay the cost of appeal.

34. The court having failed to advise Defendant Dubose of his right to a direct appeal, it is the recommendation of this court that Defendant's sentence be vacated and Defendant be resentenced to allow for a direct appeal and for the appointment of counsel to represent Defendant in any direct appeal, if Defendant desires the assistance of counsel on direct appeal.[34]

35. It appears that, at this time, Defendant does desire the assistance of counsel on direct appeal. If so, he is entitled to counsel. If Defendant does not desire the assistance of counsel, the court needs to engage in a colloquy with Defendant to make the determination as to whether that decision is knowing and voluntary.

---

[34] See, *Szubielski v. State,* 2012 WL 218950 (Del. 2012).

10

36.     It is important to keep in mind that although defendants enjoy the broad right of self-representation at trial, that right is not as well-settled when the request to proceed *pro se* comes on appeal.  Nevertheless, Delaware courts traditionally have extended the right of self representation to the appellate process when it is determined that the defendant has made his decision knowingly and voluntarily.[35]

37.     Defendant must demonstrate that a request to represent himself on appeal is made knowingly and voluntarily.  During the hearing on a request to proceed *pro se* on appeal, the Delaware Supreme Court, in *Watson v. State,*[36] addressed the factors that should be considered when the Superior Court is making the determination.  Among the factors to be addressed, the following inquires should be made by the Superior Court:  1) whether defendant retained private counsel to represent him on appeal; 2) if defendant is indigent, a determination must be made as to whether he understands he has the right to a court-appointed counsel to assist him on appeal; 3) if defendant elects to proceed *pro se*, an inquiry should be made as to the reasons for such a decision.[37]

38.     The explanation for defendant making such a decision should include inquiries into: a) whether defendant consulted with any other person, including any other attorney, in the making of that decision; b) whether defendant understands that the appellate process involves the application of rules of procedure which may prove difficult for a nonlawyer to follow or understand; c) whether defendant understands that notwithstanding his lack of legal training, he will be required to comply with all pertinent Rules of the Supreme Court; d) whether defendant understands that noncompliance with pertinent Rules of the Supreme Court may delay or prejudice his appeal; e) whether

---

[35] *Joyner v. State,* 2003 WL 22048220, *2 (Del.Super.).
[36] 564 A.2d 1107 (Del. 1989).
[37] *Watson v. State,*  564 A.2d 1107, 1109 (Del. 1989).

defendant understands that the allowance of oral argument is discretionary with the Supreme Court, and that the Supreme Court's practice in criminal cases is not to grant oral arguments as to *pro se* litigants; and f) whether defendant understands that, if his waiver of counsel is accepted, he will not thereafter be permitted to interrupt or delay the appellate process to secure the assistance of court-appointed counsel simply because he has change his position.[38]

39. The record reflects that the court's notice of Defendant's right to appeal, following the sentence in this case as required by Superior Court Criminal Rule 32(a)(2), was not provided. The record further reflects that there was never any discussion with Defendant as to his desire to represent himself, or to be represented by counsel, on direct appeal.

40. The court therefore finds that Defendant's claim that his waiver of counsel on direct appeal was not knowing and voluntary is meritorious.

41. The court recommends that the sentence be vacated and Defendant resentenced in order to provide Defendant with the proper notification of his right to appeal and so that a determination can be made by the Superior Court as to whether Defendant desires the assistance of counsel on direct appeal.

---

[38] *Watson v. State,* 564 A.2d 1107, 1109 (Del. 1989).

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be denied as to Claim One, and granted as to Claim Two. The sentence in this action should be vacated and Defendant resentenced in order to provide Defendant with the proper notification of his right to appeal.

**IT IS SO RECOMMENDED.**

_____/s/_____
Commissioner Lynne M. Parker

oc:    Prothonotary

13