William E. HARTMAN, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 260, 2006.

Supreme Court of Delaware.

Submitted: Jan. 24, 2007.
Decided: March 9, 2007.

Carole J. Dunn, Esquire, Assistant Public Defender, Georgetown, Delaware, for appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice.

The defendant-appellant, William E. Hartman, appeals from his judgments of conviction in the Superior Court on three counts of Rape in the Second Degree, one count of Rape in the Fourth Degree and one count of Unlawful Sexual Contact in the Third Degree. Hartman raises three arguments in this direct appeal. First, Hartman contends that his constitutional right to self-representation was violated when the trial court denied his motion to proceed *pro se*. Second, he contends that the trial court violated his constitutional right to confrontation when it denied his trial attorney an opportunity to cross examine the complaining witness regarding issues that related to her credibility. Finally, Hartman contends that the trial court committed legal error when it denied his trial attorney's motion to dismiss counts one and two of the indictment and, instead,

granted the State's motion to amend those counts the day before trial.

We have concluded that Hartman's constitutional right to self-representation was erroneously denied. Therefore, the Superior Court judgments of conviction must be reversed. Accordingly, it is unnecessary to address the other arguments raised by Hartman in this appeal. Since there will be a new trial, however, the prior rulings relating to those other arguments shall not constitute the law of the case.

### Facts

Hartman filed a letter with the Superior Court in early January 2006, requesting substitute counsel or asking to represent himself. In that handwritten three-page letter, Hartman stated: "I believe I have the right to defend myself." In support of that assertion, Hartman gave the name and complete citation to the United States Supreme Court's decision in *Faretta v. California.*[1]

In early February 2006, defense counsel requested that the Superior Court address Hartman's concerns about representation before final case review. Hartman's attorney raised the request for substitute counsel or to proceed *pro se* at final case review on February 24, 2006. The Superior Court indicated that those matters would be addressed on February 28, 2006, the first day of trial.

Before jury selection on the first day of Hartman's trial, the trial judge determined that substitute counsel would not be appointed to represent Hartman. The trial judge then examined Hartman regarding the request to waive his right to trial counsel and, instead, to represent himself. At the time of his trial, Hartman was forty-three years old with a ninth grade education. He is literate and nearly com-

---

1. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

pleted his GED but "failed by one point." While Hartman acknowledged taking medications in their lawfully prescribed doses, he told the trial judge he was not under their influence and felt he was in a position to make a rational choice on his representation.

The trial judge engaged Hartman in a comprehensive discussion of what would be expected at trial, what would not be permitted at trial, and the disadvantages of proceeding *pro se.* The trial judge's colloquy with Hartman also addressed the seriousness of the charges, the sentence ranges, the elements of the rape charges, and Hartman's lack of legal training of the defendant.

When asked if he had any legal training, Hartman replied: "No, just the truth." He later explained: "I don't think I will lose. I'm not guilty of these charges. . . . I will prove that as soon as I'm calling his witnesses and its my turn to cross-examine." Although he admitted to a lack of legal training, Hartman expressed his desire to defend *pro se,* telling the trial judge that he does not wish "to play any games," that he was "fighting for his life."

Hartman acknowledged he would be at a great disadvantage if he represented himself. Hartman stated that he understood that court rules were "very technical" and admitted that he was not as experienced as the prosecutor. Hartman indicated he knew he could expect no assistance from the judge at trial. The trial judge reminded Hartman of the proverb "He who is his own lawyer has a fool for a client." [2] Nevertheless, after being advised of the risks and being urged not to represent himself,

Hartman told the trial judge that he wanted to represent himself and that his decision was entirely voluntary.

The trial judge denied Hartman's request for self-representation. The trial court ruled Hartman was "not competent to represent himself" because he lacked legal training and had "unrealistic expectations" of the trial process that borders on "fantasy." The trial court concluded that it had an independent interest in the integrity, efficiency, and fairness of the trial system. Hartman's request to proceed *pro se* was denied, not on the basis that defendant had not made a knowledgeable and voluntary waiver, but based on concerns that the trial not be a "sham" or a "charade" or a "public disgrace" and be conducted "appropriately."

### Standard of Review

 Hartman contends that the trial court violated his constitutionally protected right to self-representation when it denied his motion to proceed to trial *pro se.* A defendant's right to represent himself is protected by the Sixth Amendment of the United States Constitution and by Article I, § 7 of the Delaware Constitution.[3] This Court reviews the alleged denial of a constitutional right *de novo.*[4]

### Knowing Voluntary Waiver

 "Although the right to self-representation is fundamental, the exercise of this right is not unqualified."[5] Before allowing a criminal defendant to proceed *pro se,* the court must "1) determine that the defendant has made a knowing and voluntary waiver of his constitutional right to counsel; and 2) inform the defendant of

---

**2.** David S. Shrager and Elizabeth Frost eds., *The Quotable Lawyer,* 49 (New England Publishing Associates, Inc. 1986).

**3.** *See Faretta v. California,* 422 U.S. 806, 816–19, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Hooks v. State,* 416 A.2d 189, 197 (Del.1980).

**4.** *See Snowden v. State,* 672 A.2d 1017, 1020 (Del.1996); *Stigars v. State,* 674 A.2d 477, 479 (Del.1996).

**5.** *Stigars v. State,* 674 A.2d at 479.

the risks inherent in going forward in a criminal trial without the assistance of legal counsel."[6] The record reflects that Hartman made a knowing and voluntary waiver of his right to counsel and was adequately informed of the risks of proceeding *pro se.*

The trial judge engaged Hartman in a comprehensive colloquy regarding Hartman's desire to represent himself. During that discussion, the trial judge informed Hartman that he faced the rest of his life in prison and that he would not be receiving any "slack" from the judge. The trial judge also informed Hartman that he would be held strictly to the rules of the court and that he was at a serious disadvantage trying his case against an experienced prosecutor. It is clear from the colloquy that Hartman knew the seriousness of his decision and wanted to continue *pro se.*

> The Court: You don't want any more time to talk to [defense counsel] about the pluses and minuses?
>
> The Defendant: I don't feel I need it.
>
> The Court: All right. Again, you understand I'm advising you, in my opinion, you would be far better off continuing with Ms. Dunn? You are just not trained. I don't believe you have a familiarity with the rules. You are unwise to represent yourself. You are not familiar with the law. You don't know court procedure. You don't know the rules of evidence. I strongly urge you not to represent yourself; do you understand that?
>
> The Defendant: Yes, I do.
>
> The Court: In light of looking at the rest of your life being spent in jail, all the difficulties with representing yourself, you still desire to represent your-

self and give up your right to be represented by a lawyer?

> The Defendant: Yes, I do.
>
> The Court: Is your decision entirely voluntary?
>
> The Defendant: Yes.
>
> The Court: Is anybody forcing you or putting pressure on you or trying to make you give up your right to have a lawyer? The Defendant: No, they are not.
>
> The Court: I already shared with you my view that [defense counsel] is competent, effective, able, and has exercised appropriate efforts on your behalf.
>
> The Defendant: Yes, you have.
>
> The Court: You will not be able to make any complaints that you were forced to do this because [defense counsel] was ineffective; do you understand that?
>
> The Defendant: I understand that.

Hartman could not have been more unequivocal. Hartman wished to represent himself and his right to do so is constitutionally protected. The record shows that Hartman is literate and that his decision was knowing and voluntary after being informed of the risks inherent in proceeding *pro se.* Nevertheless, the trial judge denied his request because Hartman was not "competent" to represent himself and allowing him to do so would cause the proceedings to be a "public disgrace" and a "sham."

Hartman asserts that the colloquy of the defendant comported with the guidelines established by this Court in *Briscoe v. State,*[7] that the trial judge conduct a searching inquiry to ensure that a defendant's waiver of legal representation decision to defend *pro se* is made with a full understanding of the implications and perils of self-representation.[8] We agree. The

---

6. *Id.*

7. *Briscoe v. State,* 606 A.2d 103, 108 (Del. 1992).

8. *See U.S. v. Welty,* 674 F.2d 185, 188 (3d Cir.1982); *Briscoe v. State,* 606 A.2d at 108.

record reflects that the trial judge imparted clearly to Hartman that he must comply with rules of evidence and procedure; that his defense efforts will be hampered by a lack of legal knowledge and training; and that his defense will likely be less effective if he acts as his own attorney. The trial judge also reviewed with Hartman the charges he faced and the extensive potential penalties if he were convicted. At each step, Hartman indicated his understanding of what he was being told and indicated an unambiguous and unequivocal desire to go *pro se*, notwithstanding the knowledge and advice he was given.

### Legal Knowledge Irrelevant

The analytical framework for trial judges to use in addressing a request to proceed *pro se* has been summarized by the Third Circuit, as follows:

> [A trial court cannot make] an informed decision as to the knowing and voluntary nature of a defendant's request to proceed *pro se* without a thorough inquiry, on the record, to assure itself that the defendant fully apprehends the nature of the charges against him, the perils of self-representation, and the requirements that will be placed upon him. This calls for specific forewarning of the risks that foregoing counsel's trained representation entails. Once the trial court has fulfilled those responsibilities, however, if the defendant still elects to proceed *pro se*, the trial court must permit him to do so.[9]

■ The trial judge's decision to deny Hartman's motion to proceed *pro se* was based on his determination that because Hartman has no legal training or expertise, to allow Hartman to represent himself would make the proceeding a "sham." As the Third Circuit stated in *United States v. Peppers*, the trial judge's concern over Hartman's skill and legal competency "misses the mark."[10] Federal courts have consistently held that a trial judge must not evaluate whether the defendant is competent to represent himself as part of its determination of whether he is knowingly asserting the right to self-representation.[11] In doing so, those federal courts have relied upon *Faretta v. California*, the United States Supreme Court's remand decision on the right of self-representation.[12]

In *Faretta v. California*,[13] the trial judge reluctantly allowed the defendant to proceed *pro se*, but reserved the right to revoke Faretta's "privilege" to represent himself if "it later appeared that Faretta was unable adequately to represent himself."[14] After questioning Faretta about the number of exceptions to the hearsay rule and the grounds for challenging jurors for cause, the trial judge concluded that "the ends of justice and requirements of due process require that the prior order permitting the defendant to represent himself *pro se* should be and is hereby revoked."[15]

---

**9.** *United States v. Peppers*, 302 F.3d 120, 133 (3d Cir.2002).

**10.** *Id.* at 134.

**11.** *Id.* See also *Lopez v. Thompson*, 202 F.3d 1110, 1119 (9th Cir.2000) ("In assessing waiver of counsel, the trial judge is required to focus on the defendant's understanding of the importance of counsel, not the defendant's understanding of the substantive law or the procedural details."); *United States v. McKinley*, 58 F.3d 1475, 1481 (10th Cir.1995)

(listing cases finding error when a court denies self-representation based on its evaluation of a defendant's skills or preparation).

**12.** *Id.* at 135–36.

**13.** *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

**14.** *Id.* at 808, 811 n. 4, 95 S.Ct. 2525.

**15.** *Id.* at 811 n. 4, 95 S.Ct. 2525.

In deciding Faretta's appeal, the United States Supreme Court rejected the trial court's paternalistic determination that it should ensure that Faretta was competent to represent himself in order to be allowed to proceed *pro se:*

> Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the "ground rules" of trial procedure. We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.
>
> In forcing Faretta, under the circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense.[16]

Hartman asserts that the trial judge's analysis conflicts with the holding of the United States Supreme Court in *Faretta*[17]

as applied by this Court in *Stigars:* "If a defendant has knowingly and voluntarily waived his right to counsel, the wisdom of his decision to represent himself is not an issue for the courts. It is for the defendant alone to decide 'whether in his particular case counsel is to his advantage' "; and that "once a defendant has invoked the right to self-representation that decision must be honored unless, after discussing his request with the trial judge, the defendant expresses a contrary desire."[18]

■ The inquiry into whether a defendant has made a knowing and voluntary waiver of the right to counsel and to proceed *pro se* is a difficult task.[19] In making the inquiry, the trial judge must balance two important constitutional principles: the right to the effective assistance of trial counsel and the right of self-representation.[20] In *Stigars,* we held that "the difficulty of establishing the existence of an adequate waiver of the right to counsel does not, however, dismiss a court's responsibility to honor an unequivocal request to proceed *pro se.*"[21]

Hartman made his request for self-representation in advance of trial. The record reflects that Hartman's decision to proceed *pro se* was knowing and voluntary. While undoubtedly well-motivated by concerns about Hartman's lack of legal competence, the trial judge here, like the trial judges in *Faretta* and *Stigars,* deprived the defendant of his constitutional right to self-representation.

---

**16.** *Id.* at 835–36, 95 S.Ct. 2525 (footnotes omitted).

**17.** *Id.* at 836, 95 S.Ct. 2525.

**18.** *Stigars v. State,* 674 A.2d 477, 480 (Del. 1996).

**19.** *Stigars v. State,* 674 A.2d at 479.

**20.** *Id.* at 479. *See also Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Faretta v. California,* 422 U.S. 806, 95

S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Snowden v. State,* 672 A.2d 1017 (Del.1996); *Briscoe v. State,* 606 A.2d 103 (Del.1992); *Allen v. Division of Child Support,* 575 A.2d 1176, 1185 (Del. 1990).

**21.** *Id.* at 479.

### *Conclusion*

█ In a criminal proceeding, the right of self-representation is structural.[22] Therefore, "its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." [23] Accordingly, as in *Stigars* and *Faretta,* Hartman's judgments of conviction must be reversed.

**22.** *United States v. Peppers,* 302 F.3d 120, 127 (3rd Cir.2002).

**23.** *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).