Shawn SMITH, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 190, 2009.

Supreme Court of Delaware.

Submitted: May 5, 2010.

Decided: May 26, 2010.

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, DE, for appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, DE, for appellee.

Before HOLLAND, JACOBS and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Shawn Smith ("Smith"), appeals from his judgments of conviction in the Superior Court for Aggravated Menacing, Assault in the Second Degree, weapon and related offenses. Smith contends that the record does not establish that he knowingly, intelligently and voluntarily waived his constitutional right to counsel before being permitted to proceed *pro se* at trial. We agree. Therefore, the judgments of the Superior Court must be reversed.

### Facts

During the first day of a three day trial beginning January 27, 2009, Smith's counsel made an opening statement to the jury. The State called its first witness, Shana Whittle ("Whittle"), who testified that Smith had assaulted her and several of their children. After a recess, an issue arose concerning Smith's representation by counsel. Smith's counsel informed the trial judge that:

> DEFENSE COUNSEL: I think that the very brief honeymoon he and I have enjoyed has fallen upon hard times. All based on a simple question; what did he expect me to cross examine her about. May we ask this witness about a 609 issue so we don't have to stop when we cross examine.

The following colloquy occurred:

> THE DEFENDANT: Is there anything I can say? I cannot use my attorney.
>
> . . .
>
> I don't know the legal terms in this courtroom, I cannot use him. I don't need him as a lawyer. He is a conflict of interest for me right now.
>
> THE COURT: Right now this thing disturbs me, you cannot tell me that you don't want [defense counsel]—

THE DEFENDANT: He's not trying to help me. He is not trying to help me at all.

THE COURT: Are you telling me that you want to proceed on your own?

THE DEFENDANT: I would rather do it that way, at least I go down myself, someone trying to hang me on purpose.

THE COURT: Mr. Smith, do you realize if you proceed on your own I will hold you to the rules of evidence just as I would hold [defense counsel].

THE DEFENDANT: Reference, like, I don't know your court that way. Using words I know, like, from natural words. He is sharp with it. I don't know it like that. Best I can. I would rather do it myself. He is trying to hang me, along with this dude over here. I would rather do it myself.

PROSECUTOR: I object to that use of terminology.

THE COURT: Dude or hang?

PROSECUTOR: Hang.

THE DEFENDANT: I don't know your name. You don't know my true name.

THE COURT: Understand that if you decide to proceed on your own, I will hold you to the court's procedures. I am not going to help you. I am not here to help.

THE DEFENDANT: Ain't no one in this room is going to help me.

THE COURT: You understand in most instances in which a person [sic] represent[s] themselves, they are convicted.

THE DEFENDANT: I am already convicted already.

THE COURT: You understand you are facing a good deal of minimum mandatory time if you are convicted of all of the offenses?

The prosecutor and the defense counsel then described the plea agreement negoti-ations to the trial judge up to that point, concluding that Smith faced no mandatory imprisonment term if he was convicted, but Smith responded that he still wanted to represent himself:

THE COURT: You understand you are facing minimum mandatory time, plus you will be getting time for other counts, if you are convicted.

THE DEFENDANT: Are you bringing my daughter in to testify against me?

PROSECUTOR: She is one of the witnesses.

DEFENSE COUNSEL: I already answered one of the questions.

THE DEFENDANT: Eight months. Sorry.

DEFENSE COUNSEL: I don't know who the State will call as a witness until the day of trial. I told you who they intended to call at your request, I verified with the prosecutor he did intend to call your daughter.

THE COURT: The State is not obligated to say who they were going to call today. There was no way [defense counsel] could force you to find out. Here is what I propose we do, and it is up to you, but I would like you to this over overnight.

THE DEFENDANT: I want to do this myself.

THE COURT: We only have about 40 minutes left with this jury before I send them home. I would recommend to you, it is your call, you allow [defense counsel] to represent you through the last 40 minutes, think about it overnight, because you have an absolute right if you want to proceed on your own. You have an absolute right to do it, but what you are doing is essentially sealing your own fate, in all likelihood.

THE DEFENDANT: Only one in control of my fate.

THE COURT: You want [defense counsel] as your attorney?

THE DEFENDANT: No.

THE COURT: [Defense counsel], can you sit in whatever you find comfortable. The spectator chairs are not comfortable.

DEFENSE COUNSEL: You can have the entire file.

THE COURT: Jury, Please.

(Jury enters the courtroom at 3:50 p.m.)

. . .

THE COURT: [ ] Ladies and gentlemen, sorry that we are delayed in reconvening. Trust me, it is not that we don't care about your time. We all understand your time is valuable. While you were out an issue came up that we did not anticipate, and that is Mr. Smith has a Constitutional right to assistance of counsel in defense of his case. He also has a Constitutional right to proceed without counsel, if that is what he chooses to do. During the break, Mr. Smith advised me that he wishes to exercise his Constitutional right not to proceed with counsel, but to proceed on his own. Mr. Smith will be representing himself. I have asked his former counsel, [defense counsel], to stay here and, if necessary, provide advice to Mr. Smith when Mr. Smith asks for it. And [defense counsel] has been kind enough to agree to do so.

But from this point forward, Mr. Smith will be representing himself. Thank you. Sorry, again, for the delay. Would you let's recall the witness, please.

The State completed its direct examination of Whittle and Smith cross-examined her. Smith made several evidentiary objections which were overruled. During Smith's cross examination the state made several objections which were sustained and the trial court also sua sponte interrupted several times. The next morning before the cross-examination of Whittle resumed the trial court conveyed to Smith its own observations:

THE COURT: Do you understand, frankly, that yesterday your performance in the courtroom, I thought you displayed some temper with your common law wife, so to speak, probably you did great harm with this jury do you understand that?

THE DEFENDANT: No.

THE COURT: Well, your examination of this witness of the last witness did not, in my view, help you at all with this jury and [defense counsel's] examination would have been, I am certain, much more beneficial for your representation than yours did. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You still insist on going forward on your own?

Smith continued to represent himself. Smith was convicted by a jury of several of the charged offenses. On March 27, 2009, Smith was charged cumulatively to fifteen years, four months imprisonment at Level 5 suspended after eight years, four months imprisonment at Level 5 for decreasing levels of supervision. Smith filed a timely notice of appeal and requested that counsel be appointed for him on appeal. Smith's appeal was remanded to the Superior Court where counsel was appointed.

### Knowing Waiver Required

 Smith contends that he did not knowingly, intelligently and voluntarily waive his constitutional right to counsel before being permitted to proceed *pro se* at trial. "It is well-established that criminal defendants have a constitutional, Sixth Amendment right to waive counsel and continue *pro se* if they do so know-

ingly, intelligently, and voluntarily."[1] "A determination of whether a defendant has intelligently waived the right to counsel depends upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the defendant."[2] We review an asserted denial of that constitutional right to counsel *de novo*.[3]

We have held that "[b]efore a trial court may permit a defendant to represent himself, the court must: 1) determine that the defendant has made a knowing and voluntary waiver of his constitutional right to counsel; and 2) inform the defendant of the risks inherent in going forward in a criminal trial without the assistance of legal counsel."[4]

■■■ Before the trial judge allows a defendant to exercise his right to waive counsel, he must conduct a hearing to inquire into the defendant's decision, warn the defendant of the dangers and disadvantages of self-representation, and establish a record that the defendant knows what he is doing.[5] A hearing is required to allow the defendant to establish on the record that the right to counsel is being waived intelligently and voluntarily.[6] Several factors are used to determine whether a defendant has successfully demonstrated a proper waiver of counsel.[7] In *Briscoe v. State*,[8] we adopted the guidelines set forth in *United States v. Welty*.[9] The trial judge should consider the defendant's background, experience, and conduct, and advise the defendant of the following:

1) he will have to conduct his defense in accordance with the rules of evidence and criminal procedure, rules with which he may not be familiar;

2) he may be hampered in presenting his best defense by his lack of knowledge of the law;

3) the effectiveness of his defense may well be diminished by his dual role as attorney and accused;

4) the nature of the charges;

5) the statutory offenses included within them;

6) the range of allowable punishments thereunder;

7) possible defenses to the charges and circumstances in mitigation thereof; and

8) all other facts essential to a broad understanding of the whole matter.[10]

The facts in Smith's case are very similar to those in *Boyer v. State*,[11] where we concluded "[t]he record clearly shows that

1. *Boyer v. State*, 2009 WL 3841973, at *1 (Del. Nov. 16, 2009) (citing *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)).

2. *Briscoe v. State*, 606 A.2d 103, 107 (Del. 1992) (citation omitted).

3. *Boyer v. State*, 2009 WL 3841973, at *2 (citing *Hartman v. State*, 918 A.2d 1138, 1140 (Del.2007)).

4. *Stigars v. State*, 674 A.2d 477, 479 (Del. 1996) (citing *Faretta v. California*, 422 U.S. at 835, 95 S.Ct. 2525; *Briscoe v. State*, 606 A.2d at 107–08; *Hooks v. State*, 416 A.2d 189, 197 (Del.1980)).

5. *Boyer v. State*, 2009 WL 3841973, at *1 (citing *Faretta v. California*, 422 U.S. at 835, 95 S.Ct. 2525).

6. *Watson v. State*, 564 A.2d 1107, 1109 (Del. 1989).

7. *Briscoe v. State*, 606 A.2d at 107.

8. *Id.* at 107.

9. *United States v. Welty*, 674 F.2d 185 (3d Cir.1982).

10. *Briscoe v. State*, 606 A.2d at 108.

11. *Boyer v. State*, 2009 WL 3841973 (Del. Nov. 16, 2009).

the short dialogue between the [trial judge] and Boyer did not adequately and thoroughly advise Boyer of the risks associated with proceeding *pro se.*"[12] Nevertheless, in this case, the State argues that Smith was entitled to proceed *pro se.* Under similar circumstances, we rejected the same argument in *Boyer*:

> Despite an incomplete inquiry, the State submits that the trial judge had no choice but to allow Boyer to exercise his constitutional right to represent himself at trial. The State's submission is partially accurate. Although an accused has a right to represent himself, the exercise cannot occur at the expense of an accused's right to counsel, which the accused must waive knowingly, intelligently and voluntarily.
>
> The State also argues that Boyer made it quite clear that he wished to conduct his defense in his own way. This argument seems to suggest that a defendant's passion, fervent desire or insistence that he represent himself somehow substitutes for a knowing, intelligent and voluntary relinquishment of the right to counsel or somehow cures an ineffective waiver of counsel. We recognize that a judge may face a defendant who adamantly states that he is aware of his right to counsel and wishes to waive that right; however, those statements do not alleviate the judge's responsibility to conduct a comprehensive evidentiary hearing to explore and explain the defendant's options.[13]

That reasoning is applicable to Smith's case. Even though Smith adamantly asserted that he would like to proceed *pro se*, the trial judge was still responsible for conducting "a comprehensive evidentiary hearing to explore and explain the defendant's options."[14]

The fact that an accused may tell the trial court that he is aware of his right to counsel, and desires to waive that right, does not eliminate the trial court's responsibility to conduct a "searching inquiry."[15] It is undisputed that conducting a "searching inquiry" into waiver of counsel poses "a difficult task" for the trial court, particularly when the defendant appears "experienced in the litigation process and [when] friction has arisen between the defendant and his then-counsel."[16] A trial judge routinely conducts such inquiries in considering guilty pleas, however, and is expected to make no less of an inquiry before permitting a defendant to proceed *pro se.*[17]

In this case, the trial judge reviewed several of the *Briscoe* factors with Smith, but not all of them. The trial judge warned Smith that he would be bound by the rules of evidence and procedure, that most defendants proceeding *pro se* are convicted, and that he was facing a "good deal of mandatory time." To the limited extent the Superior Court addressed any of the *Briscoe* factors, however, Smith's answers were not responsive. Following that brief exchange, the trial judge never made a determination on the record that Smith knowingly and voluntarily waived his right to counsel.

The *Briscoe* guidelines are recommended factors for a trial judge to consider in conducting the searching inquiry that

---

12. *Id.* at *2.

13. *Id. (citing Briscoe v. State,* 606 A.2d at 107).

14. *Id.*

15. *Briscoe v. State,* 606 A.2d at 107 (quoting *United States v. Welty,* 674 F.2d at 189).

16. *United States v. Welty,* 674 F.2d at 191.

17. *Id. See also Watson v. State,* 564 A.2d at 1109.

is mandated by the United States Constitution. A knowing and intelligent waiver can occur without reviewing each of those factors *in haec verba*. In Smith's case, however, as in *Boyer*, the trial judge did not ascertain enough information to establish a basis for a knowing and intelligent waiver of the right to counsel. The record reflects that the trial judge's inquiry was not sufficiently searching to establish that Smith's waiver was understanding and voluntary.

### Conclusion

The record in Smith's case, as in *Boyer*, demonstrates why the best practice is for trial judges to conduct a searching inquiry by reviewing the factors set forth in *Briscoe*. Permitting Smith to proceed *pro se* without adequately advising him of the dangers of self-representation prevented Smith from knowingly and intelligently waiving his Sixth Amendment right to counsel. Therefore, the judgments of the Superior Court are reversed and this matter is remanded for a new trial.