IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILLIAM MORRISON, | § | |
| | § | No. 432, 2015 |
| Defendant-Below, | § | |
| | § | Court Below – Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 0907024289 |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: January 20, 2016
Decided: February 25, 2016

Before **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices.

Upon appeal from the Superior Court. **REVERSED and REMANDED.**

Christopher S. Koyste, Esquire, Law Office of Christopher S. Koyste, LLC, Wilmington, Delaware, Attorney for Defendant-Below, Appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware, Attorney for Plaintiff-Below, Appellee.

**HOLLAND**, Justice:

The issue in this case is whether Morrison's waiver of his right to counsel for trial was knowing, intelligent, and voluntary as required by *Faretta v. California*.[1] In *United States v. Welty*,[2] the Third Circuit adopted guidelines for a waiver of counsel inquiry. This Court adopted the *Welty* guidelines in *Briscoe v. State*.[3] The purpose of the *Briscoe/Welty* guidelines is to promote a comprehensive inquiry before permitting a waiver of counsel. The record reflects that the waiver colloquy between the Trial Judge and Morrison was admittedly incomplete. The State argues that Morrison was entitled to proceed *pro se*. Under similar circumstances, we rejected the same argument in *Boyer*:

> Despite an incomplete inquiry, the State submits that the trial judge had no choice but to allow Boyer to exercise his constitutional right to represent himself at trial. The State's submission is partially accurate. Although an accused has a right to represent himself, the exercise cannot occur at the expense of an accused's right to counsel, which the accused must waive knowingly, intelligently and voluntarily.[4]

The right to counsel is protected under the United States Constitution.[5] It is among those constitutional rights which are so basic to a fair trial that a violation

---

[1] *Faretta v. California*, 422 U.S. 806, 835 (1975).
[2] *United States v. Welty*, 674 F.2d 185 (3d Cir. 1982).
[3] *Briscoe v. State*, 606 A.2d 103, 108 (Del. 1992).
[4] *Boyer v. State*, 2009 WL 3741973, at *2 (Del. Nov. 16, 2009).
[5] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. CONST. amend. VI; *see also Johnson v. Zerbst*, 304 U.S. 458, 463 (1938); *Gideon v. Wainwright*, 372 U.S. 342 (1963) (holding that the Sixth Amendment right to counsel in criminal proceedings applies to states through the Fourteenth Amendment); *Faretta*, 422 U.S. at 826-32.

can never be treated as harmless error.[6] The record reflects Morrison's waiver of his right to counsel was not knowing, intelligent, and voluntary. Therefore, the judgment of conviction must be reversed, and this matter must be remanded for a new trial.[7]

### *Facts*

On July 24, 2009, Tiffany Taylor walked from her apartment in West Dover, Delaware to the Dover Public Library. On the way back, she met William Morrison and the two conversed as they walked back to Taylor's residence. According to Taylor, once back at her apartment, Morrison asked to use her bathroom but Taylor declined. Morrison then asked for a glass of wine but ultimately accepted water. Morrison was told to wait outside of the apartment while Taylor brought him the water.

After pouring the water into a glass, Taylor turned around and saw Morrison standing in her dining room. Startled, Taylor put the glass down and started to walk out of the kitchen. According to Taylor, Morrison grabbed her and carried her into

---

[6] *Welty*, 674 F.2d at 194 n.6 (citing *Chapman v. California*, 386 U.S. 18, 23 & n.8 (1967) (internal quotations omitted)).

[7] *See Faretta*, 422 U.S. at 807. *See also Welty*, 674 F.2d at 194 ("Because this record does not disclose that Welty effectively waived his constitutional right to counsel, we are obliged to reverse his conviction."); *Smith v. State*, 996 A.2d at 786, 792 (Del. 2010) ("Permitting Smith to proceed *pro se* without adequately advising him of the dangers of self-representation prevented Smith from knowingly and intelligently waiving his Sixth Amendment right to counsel. Therefore, the judgements of the Superior Court are reversed and this matter is remanded for a new trial.").

the living room, telling her he had a gun. Taylor screamed and Morrison left the apartment.

After a substantial period of time, Taylor later picked up her children from daycare. She took them for ice cream at a nearby shopping center where she contacted the Dover Police Department about the incident.

Later that day, Officer Derrick Mast obtained a description of the suspect from Taylor. The next day, Officer Mast showed Taylor a photo array he had compiled, which included a photo of Morrison. Taylor immediately identified Morrison as the individual who had entered her apartment the preceding day.

On July 26, 2009, Officer Mast arrested Morrison and took him to the police station for an interview. During the interview, Morrison told Officer Mast that Taylor had invited him into her apartment for a drink and that when Taylor pushed him away as he tried to give her a hug, he left the apartment. While being transported to the police station, Morrison also stated that he only trespassed, but did not commit any burglary. Morrison claimed to have used Taylor's bathroom, but, when asked to describe the bathroom, Morrison was unable to do so. Taylor had informed the police that her bathroom has a highly distinctive decor in that her bathtub is bright yellow and the room has a "rubber ducky" theme.

On January 19, 2010, a hearing was held at then-Defense Counsel's request for the purpose of informing the Trial Judge that Morrison was unhappy with his

4

court appointed counsel. At this hearing, Morrison stated he wished to terminate his representation by appointed counsel because he was dissatisfied with his performance. The Trial Judge, after conducting an inquiry, found that Morrison's Defense Counsel had no conflict and would not be replaced. The Trial Judge informed Morrison that he could either continue to be represented by Defense Counsel or proceed *pro se*.

The Trial Judge then engaged Morrison in a limited colloquy discussing Morrison's level of education and familiarity with the criminal justice system:

> THE COURT: You want to proceed on your own?
>
> THE DEFENDANT: Yes. I will proceed on my own.
>
> THE COURT: All right. What education do you have, Morrison?
>
> THE DEFENDANT: I don't have as far as like dealing with the law. But as far as, you know, some things—common sense, you know. And I am facing—yeah. Well, I finished school. I finished 12th grade.
>
> THE COURT: Very good. Have you been involved in the criminal justice system before?
>
> THE DEFENDANT: No. No. No, I haven't.
>
> THE COURT: I mean do you have prior convictions?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Okay. Have you represented yourself in any of those earlier matters that you have had?
>
> THE DEFENDANT: No, I haven't.

The Trial Judge then informed Morrison that he would have to follow the rules of the court should he represent himself:

> THE COURT: All right. You recognize that when you were represented before you were represented by trained attorneys who represented you in those cases. You may or may not have been distressed by the outcome of them if you had a conviction; you may have been pleased with the outcome if you had an acquittal. However, be that as it may, you had the experience going through that with counsel representing you. If I allow you to proceed on a *pro se* basis, do you understand that if you are representing yourself there will be certain laws and requirements you will have to abide by which you don't have any experience over. Do you understand that?
>
> THE DEFENDANT: Yes, I understand.
>
> THE COURT: Do you also understand the consequences that can happen? In other words, what can happen is that you may not know what to do and we'll be moving on to something else and you may miss something.
>
> THE DEFENDANT: True. I am not saying that I don't want to be represented, but I want to be treated fairly; that's what I want today. If you are not going to dismiss him, you know what I mean, then I don't have no other choice.
>
> THE COURT: Morrison, you've given me no basis for me to dismiss and replace him with somebody else because your only disagreement with him is the fact that he has a different viewpoint on what legally he can represent to this court; that is not a conflict between yourself and [Defense Counsel] that I can rely upon.
>
> Simply a disagreement does not mean that you have a right to replace your attorney. If that happens, you can replace

6

any attorney who comes before you numerous times; and the Court can't allow that.

So your only recourse at this point is—if you do not wish to have [Defense Counsel] represent you, you would have—you have a right to represent yourself; the law does allow that. But I want to make sure that if that's what you want to do—that's truly what you want to do. It has some great risks for you as an individual not trained in the law.

THE DEFENDANT: I understand. Yes. That's exactly— I don't have no other choice.

The Trial Judge then discussed with Morrison the challenges of going up against the State *pro se* and again reinforced the notion that Morrison would have to abide by the rules of the court:

THE COURT: However, understanding legalese, in my mind, does not equate with professional experience. But people do represent themselves without having a professional degree and without that type of professional experience. And some people have done quite well on their own; some people have not. It boils down to— basically, it's going to be a shooting match. You are going to go into trial with a Derringer; the prosecution is going to come in with a howitzer, a large cannon. That's the difference in terms of the ability that the State will have against you as an individual. But our Constitution does provide that people have an absolute right to represent themselves if that's what they really truly want to do. I am telling you right now, if you choose to represent yourself you are to abide by all criminal procedures, the rules of this Court, the criminal case manager plan, and the rules of this Court. I am not sure you are familiar with that. If you want to raise an objection or speak, you may not be allowed to do so; and you won't know why. You may be frustrated. It may result in the jury having an adverse opinion of you because of your inexperience. With that

7

understanding, I can allow you to proceed. I can allow you to proceed. But I want you to understand that, if you do that, you are going to be under that type of a gun. And I hate to see that happen to anybody who comes before the system. Do you understand that?

THE DEFENDANT: Yes, I understand that.

After this exchange the Trial Court granted Morrison's request to proceed *pro se* but appointed Defense Counsel to remain during the trial in the role of standby counsel.

### *Right To Counsel*

A criminal defendant has the right to be represented at trial by counsel pursuant to the Sixth Amendment of the United States Constitution which extends to all "critical stages" of the criminal proceeding.[8] In *Faretta*, the United States Supreme Court held that a defendant in a State criminal proceeding may proceed *pro se* if the defendant knowingly, intelligently, and voluntarily waives the right to counsel. Therefore, once a defendant clearly and unequivocally asserts his right to self-representation, the trial court must proceed with a hearing to make that determination.[9]

Waiver of the right to counsel "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and

---

[8] *Iowa v. Tovar*, 541 U.S. 77, 87-88 (2004); *see also Faretta*, 422 U.S. at 807 (stating that a defendant's Sixth Amendment right to represent himself is made applicable to the States through the due process clause of the Fourteenth Amendment).
[9] *Faretta*, 422 U.S. at 826-32; *Smith*, 996 A.2d at 786; *Briscoe*, 606 A.2d at 103.

conduct of the accused.'"[10] The trial judge must "make a thorough inquiry and . . . take all steps necessary to insure the fullest protection of this constitutional right."[11] In *Welty*, the Third Circuit held that "at a minimum, to be valid, a [defendant's] waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation and all other facts essential to a broad understanding of the whole matter."[12]

The Third Circuit further noted that "[a] judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances, and only after bringing home to the defendant the perils he faces in dispensing with legal representation."[13] The Third Circuit then enunciated guidelines for a trial judge to use in determining whether a defendant is knowingly and intelligently waiving the Sixth Amendment right to counsel. The trial judge should advise the defendant, for example:

> (1)  that the defendant will have to conduct his defense in accordance with the rules of evidence and criminal procedure, rules with which he may not be familiar;

---

[10] *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (quoting *Johnson*, 304 U.S. at 464); *United States v. Salemo*, 61 F.3d 214, 218 (3d Cir. 1995) (superseded by *United States v. Turner*, 677 F.3d 570 (3d Cir. 2012)).

[11] *Salemo*, 61 F.3d at 219.

[12] *Henderson v. Frank*, 155 F.3d 159, 166 (3d Cir. 1998) (citing *Welty*, 674 F.2d at 188-89.

[13] *Welty*, 674 F.2d at 189 (quoting *Johnson*, 304 U.S. at 465) (internal quotations omitted).

(2)    that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law;

(3)    that the effectiveness of his defense may well be diminished by his dual role as attorney and accused;

(4)    the nature of the charges;

(5)    the statutory offenses included within them;

(6)    the range of allowable punishments thereunder;

(7)    possible defenses to the charges and circumstances in mitigation thereof; and

(8)    all other facts essential to a broad understanding of the whole matter.[14]

After undertaking such an inquiry, "whether there is a proper waiver should be clearly determined by the trial court," and that determination must appear upon the record.[15]

The record reflects that Morrison was not fully apprised of the dangers of self-representation. The Trial Judge discussed Morrison's criminal history, level of education, warned him about having to abide by the court's rules, and addressed the challenges of having a trained attorney as an adversary. However, the Trial Judge failed to follow the key components set forth by the Third Circuit in *Welty* to determine whether a proper waiver of counsel had been established.[16] While the Trial Judge in Morrison's case covered some of the *Briscoe/Welty* factors, the Trial Judge failed to

---

[14] *See Welty*, 674 F.2d at 188-89 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948) (plurality opinion)).

[15] *Johnson*, 304 U.S. at 465.

[16] *See Briscoe*, 606 A.2d at 107 ("The fact that an accused may tell the trial court that he is aware of his right to counsel, and desires to waive that right, does not eliminate the trial court's responsibility to conduct a 'searching inquiry.'").

inform Morrison of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses, possible circumstances in mitigation, and the dangers of the dual roles of being an attorney and the accused. Thus, like the trial judge in *Welty*, the Trial Judge in Morrison's case failed to conduct "a penetrating and comprehensive examination of all the circumstances" in order to find a proper waiver.[17]

This Court has previously adopted the *Welty* guidelines[18] to determine if a defendant's waiver of the right to counsel is knowing, intelligent, and voluntary. We have held that the failure of a trial court to substantially adhere to these guidelines requires the conviction(s) to be reversed and the matter remanded for a new trial.[19] In two cases that are similar to Morrison's, this Court reversed and remanded both convictions for a new trial because the trial judge failed to substantially address the *Briscoe/Welty* factors, when conducting a colloquy concerning the defendant's waiver of the Sixth Amendment right to counsel.[20]

In *Boyer v. State*, Boyer expressed his dissatisfaction with his appointed counsel and requested to proceed *pro se*.[21] During the *Faretta* colloquy, the trial judge only advised Boyer that "he would have to adhere to the rules of the court, the rules of

---

[17] *Welty*, 674 F.2d at 189.
[18] *Briscoe*, 606 A.2d at 106-07.
[19] *See Id.* (finding that the Superior Court failed to warn the defendant of the dangers of self-representation); *Smith*, 996 A.2d at 790-91.
[20] *Smith*, 996 A.2d at 791; *Boyer*, 2009 WL 3841973, at *2.
[21] *Boyer*, 2009 WL 3841973, at *1.

evidence, and all those things."[22]  The trial judge found Boyer's waiver of counsel to be valid and allowed appointed counsel to withdraw.[23]  Boyer represented himself at trial and was found guilty.[24]  This Court held that the trial judge erred in granting Boyer's request to proceed *pro se*, and that the trial judge's failure to properly advise Boyer of the dangers of self-representation required his conviction to be reversed and remanded for a new trial.[25]

In *Smith v. State*, the defendant expressed his desire to proceed *pro se* during a recess after the State's first witness was presented at trial due to dissatisfaction with his court appointed counsel.[26]  During the *Faretta* colloquy, the trial judge only advised the defendant that "he would be bound by the rules of evidence and procedure, that most defendants proceeding *pro se* are convicted, and that he was facing a good deal of mandatory time."[27]  Smith represented himself at trial and was found guilty of some of the charges.[28]  This Court held that the trial judge "did not ascertain enough information to establish a basis for a knowing and intelligent waiver of the right to

---

[22] *Id.* at *2 (internal quotations omitted).
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Smith*, 996 A.2d at 787.
[27] *Id.* (internal quotations omitted).
[28] *Id.* at 789.

counsel."[29] This Court held that Smith's conviction must be reversed and remanded the case for a new trial.[30]

In this case, the Trial Judge failed to substantially address the *Briscoe/Welty* factors. This failure resembled the trial judges' limited waiver colloquies in *Boyer* and *Smith*. In *Boyer*, we stated:

> We recognize that a judge may face a defendant who adamantly states that he is aware of his right to counsel and wishes to waive that right; however, those statements do not alleviate the judge's responsibility to conduct a comprehensive evidentiary hearing to explore and explain the defendant's options.[31]

That reasoning is applicable to Morrison's case. Even though Morrison asserted that he would like to proceed *pro se*, the Trial Judge was still responsible for conducting "a comprehensive evidentiary hearing to explore and explain the defendant's options."[32]

The *Briscoe/Welty* guidelines are recommended factors for a trial judge to consider in conducting the searching inquiry that is mandated by the United States Constitution. A knowing and intelligent waiver can occur without reviewing each of those factors in *haec verba*. The Trial Judge in Morrison's case, however, as in *Boyer* and *Smith*, did not ascertain enough information to establish a basis for a

---

[29] *Id.* at 792.
[30] *Id.*
[31] *Boyer*, 2009 WL 3841973, at *2.
[32] *Id.*

13

knowing and intelligent waiver of the right to counsel. The record reflects that the Trial Judge's inquiry was not sufficiently searching to establish that Morrison's waiver was understanding and voluntary.

### *Conclusion*

We hold that Morrison's waiver of the right to counsel was not knowing, intelligent, and voluntary under the Sixth Amendment to the United States Constitution.[33] Therefore, the judgment of conviction must be reversed, and this matter must be remanded for a new trial.

---

[33] *See Faretta*, 422 U.S. at 819; *Welty*, 674 F.2d at 186, 188.