IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRANDON NORMAN, | § | |
| | § | |
| Defendant Below, | § | No. 4, 2024 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. N2203010974 |
| | § | |
| Appellee. | § | |

Submitted: July 16, 2024
Decided: September 12, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## ORDER

After consideration of the brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26(c), the State's response, and the Superior Court record, it appears to the Court that:

(1) A grand jury indicted Brandon Norman for second-degree assault, possession of a deadly weapon during the commission of a felony (PDWDCF), three counts of endangering the welfare of a child, four counts of terroristic threatening, criminal mischief, and several motor-vehicle offenses. Norman represented himself during the two-day trial, with the assistance of standby counsel.

(2) The charges arose from an incident that began with an automobile collision on March 20, 2022. Dennis Zink was driving his pickup truck on

Springfield Boulevard; Zink's three young children were in the back seat. As Zink approached a curve in the road, he observed an oncoming BMW, driven by Norman, driving dangerously. Zink pulled to the side of the road, but the BMW crossed the road, struck Zink's truck, and continued into a wooded ditch on Zink's side of the road.

(3)    After the crash, Norman exited his vehicle and approached Zink's truck, carrying a "Club"-style steering-wheel locking device. Norman used the steering-wheel lock to bash in the window of Zink's truck.[1] He then reached through the broken window, opened the locked door, and began beating Zink with the steering-wheel lock, as Zink's children screamed in the back seat; he also threatened to murder Zink.[2] Zink sustained a broken nose and injuries to his arm that interfered with his ability to work and perform daily activities for several months.

(4)    The crash and ensuing commotion drew the attention of several residents of nearby homes, one of whom recognized Norman because they had

---

[1] The evidence of Norman's conduct included Zink's testimony; Norman's testimony; the testimony of a passing motorist who stopped her vehicle when she saw the damaged vehicles; and the testimony of several residents of nearby homes. A cellphone video recorded by one of the bystanders captured a portion of the incident, and a 911 recording documented one bystander's present-sense statements as to what was occurring.

[2] Several witnesses testified that Norman threatened to murder Zink, and the cellphone video captured Norman threatening to murder Zink. Zink and the passing motorist testified that Norman also threatened to murder the children. Norman admitted that he threatened to murder Zink but denied threatening to murder the children; indeed, he denied knowing that children were in the car, despite the passing motorist's and several other bystanders' testimony that they could hear the children screaming. The children's distress prompted the passing motorist to attempt to intervene in the assault, but Norman evaded her efforts.

played football together for several seasons. The acquaintance intervened and Norman left the scene with him; they walked through the yard of one of the nearby properties and got into the acquaintance's car. The acquaintance began driving toward Norman's house, but after a short time Norman asked to get out of the car near Governor Square Shopping Center. The acquaintance then returned to the scene and identified Norman to responding law-enforcement officers.

(5) In the meantime, one of the responding officers, Delaware State Trooper Sherwood, had determined that the license plate displayed on the BMW was expired and registered to a Chevy Malibu that belonged to Norman and that the BMW's vehicle-identification number was unregistered. Trooper Sherwood obtained a DMV photo of Norman and bystanders' descriptions of the suspect's appearance and clothing and learned that Norman and another person had left the neighborhood in a black Chrysler 300. Trooper Sherwood conveyed the identifying information to other officers, who soon apprehended Norman near Governor Square Shopping Center.

(6) Norman testified at trial. He admitted veering into oncoming traffic but stated that he tried to avoid a collision by steering onto the shoulder on Zink's side of the road. He testified that Zink slowed his truck to approximately two miles an hour but then intentionally turned the truck to strike Norman's vehicle, pushing Norman's vehicle into the ditch. Norman testified that he approached Zink's truck

3

carrying the steering-wheel lock and asked why Zink had hit his vehicle, to which Zink responded by laughing and raising his window. Norman then became emotional, put a hole in the window with the steering-wheel lock, attempted to remove Zink from the truck, and, while Zink remained seated in the truck, leaned over the seat and began striking Zink with the steeling-wheel lock. Norman admitted threatening to murder Zink but denied threatening to murder the children.

(7) The jury found Norman not guilty of the terroristic threatening charges as to Zink's children and guilty of the other charges. The Superior Court sentenced Norman to pay fines and restitution and to serve a total of thirty-two years in prison, suspended after five years for decreasing levels of supervision.

(8) On appeal, Norman's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Norman's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Norman of the provisions of Rule 26(c) and provided him with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Norman of his right to supplement counsel's presentation. Norman had not provided points for the Court's consideration by the time his counsel filed the brief and motion to withdraw. On July 11, 2024, Norman's counsel filed points that Norman requested the Court to consider. The State has responded to the Rule 26(c) brief and argues that the Superior Court's judgment should be affirmed.

4

(9) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must be satisfied that the appellant's counsel has made a conscientious examination of the record and the law for arguable claims.[3] This Court must also conduct its own review of the record and determine whether "the appeal is indeed so frivolous that it may be decided without an adversary presentation."[4] In light of that duty, the Court has considered the issues that Norman has raised, despite their late submission.

(10) Norman's first argument is that the Superior Court erred by not giving a "reasonable person" instruction to the jury. Norman cites *State v. Robinson*[5] and 11 *Del. C.* § 441 in support of his argument. *Robinson* relates to the self-defense instruction provided during the defendant's manslaughter trial. Section 441 provides that "[i]n any prosecution for an offense, it is a defense that the accused engaged in the conduct charged to constitute the offense under ignorance or mistake of fact if . . . (3) [t]he ignorance or mistake is of a kind that supports a defense of justification as defined in this Criminal Code."[6] We therefore understand Norman's argument to be that the Superior Court erred by denying his request for a self-defense instruction. We review this claim *de novo*.[7]

---

[3] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).
[4] *Penson*, 488 U.S. at 82.
[5] 36 A.2d 27 (Del. Ct. Oyer & Terminer 1944).
[6] 11 *Del. C.* § 441(3).
[7] *Wright v. State*, 953 A.2d 144, 147-48 (Del. 2008).

(11) Norman argued that a self-defense instruction was warranted based on his testimony that Zink (i) turned his truck into Norman's vehicle as Norman's vehicle crossed onto the shoulder on Zink's side of the road and (ii) laughed when Norman approached his truck after the collision. The Superior Court determined that the evidence presented did not support a self-defense instruction, emphasizing that when Norman assaulted Zink there was no imminent threat.[8]

(12) Title 11, Section 464(a) "sets forth the defense of justification or, as it is often colloquially called, 'self-defense.'"[9] The statute provides that the "use of force upon or toward another person is justifiable when the defendant reasonably believes that such force is immediately necessary for the purpose of protecting the defendant against the use of unlawful force by the other person on the present occasion."[10] A person using non-deadly protective force "may estimate the necessity thereof under the circumstances as the person reasonably believes them to be when the force is used, without retreating, surrendering possession, doing any other act which the person has no legal duty to do[,] or abstaining from any lawful action."[11] In short, the "self-defense doctrine permits the intentional use of force in response to a reasonably perceived threat of imminent bodily harm."[12]

---

[8] Appendix to Opening Brief at A367-69, A371-78.
[9] *Smith v. State*, 913 A.2d 1197, 1210 (Del. 2006).
[10] 11 *Del. C.* § 464(a).
[11] *Id.* § 464(b).
[12] *Lewis v. State*, 144 A.3d 1109, 1117 (Del. 2016).

(13) The jury may consider a defense only if the court is satisfied that there is credible evidence supporting each element of the defense.[13] A defendant has presented evidence sufficient to satisfy the credible evidence threshold if the defendant's version of events, if taken as true, would entitle the defendant to the requested instruction.[14]

(14) The Superior Court correctly concluded that the evidence did not satisfy that standard in this case. Taking Norman's version of events as true, Norman could not reasonably have believed that beating Zink with the steering-wheel lock was immediately necessary to protect himself against a use of unlawful force by Zink. Even if, as Norman testified, Zink caused a collision that otherwise would have been avoided, Norman did not show that Zink continued to pose any threat after the crash. To the contrary, Norman admitted the following: Zink stayed in his truck after the crash and did not approach Norman's vehicle;[15] Norman could have left the area or waited for police to arrive but instead got out of his vehicle and approached Zink's truck with the steering-wheel lock in hand;[16] Zink remained seated in his truck and

---

[13] *See* 11 *Del. C.* § 303(a) ("No defense defined by this Criminal Code or by another statute may be considered by the jury unless the court is satisfied that some credible evidence supporting the defense has been presented."); *Perkins v. State*, 920 A.2d 391, 398 (Del. 2007) ("As we have noted, a 'defendant is entitled to a jury instruction on self-defense only if there is evidence sufficient to establish each element of that defense.'" (quoting *Fetters v. State*, 436 A.2d 796, 797 (Del. 1981)).
[14] *Smith*, 913 A.2d at 1210; *Perkins*, 920 A.2d at 398.
[15] Appendix to Opening Brief at A333-34.
[16] *Id.* at A335, A339.

closed the window when Norman confronted him;[17] Norman smashed Zink's window with the steering-wheel lock, leaned into Zink's truck, and tried to remove Zink from the truck; [18] and Norman threatened to murder Zink while striking him with the steering-wheel lock.[19] The Superior Court did not err by denying Norman's request for a self-defense instruction.

(15) Norman also contends that the Superior Court erred by allowing him to represent himself at trial. He claims that his remarks during the *pro se* colloquy demonstrated that he misunderstood the charges against him and that he did not understand the procedural or evidentiary rules. This argument is without merit.

(16) Under the Sixth Amendment of the United States Constitution, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, a criminal defendant has the right to representation by counsel at all critical stages of a criminal proceeding, including trial.[20] A defendant also has a constitutional right to waive representation by counsel and represent himself if he does so knowingly, intelligently, and voluntarily.[21] Whether a defendant's waiver

---

[17] *Id.* at A333, A335.
[18] *Id.* at A333, A335, A336.
[19] *Id.* at A336.
[20] *Morrison v. State*, 135 A.3d 69, 73 & n.8 (Del. 2016).
[21] *Id.* at 73; *see also Faretta v. California*, 422 U.S. 806, 835-36 (1975) (discussing the defendant's "constitutional right to conduct his own defense" and stating: "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits." (internal quotation omitted)).

of counsel is knowing, intelligent, and voluntary "depends upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the defendant."[22] The trial court must therefore conduct a "thorough inquiry" to ensure "the fullest protection of this constitutional right."[23] The court must "inquire into the defendant's decision, warn the defendant of the dangers and disadvantages of self-representation, and establish a record that the defendant knows what he is doing and his choice is made with eyes open."[24]

(17) In *Briscoe v. State*,[25] this Court adopted guidelines set forth by the United States Court of Appeals for the Third Circuit in *United States v. Welty*[26] for determining whether a defendant's waiver of counsel is knowing, intelligent, and voluntary. Under the "*Briscoe-Welty* guidelines,"[27] the trial judge "should advise the defendant, for example":

> (1) that the defendant will have to conduct his defense in accordance with the rules of evidence and criminal procedure, rules with which he may not be familiar;
> (2) that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law;

---

[22] *Briscoe v. State*, 606 A.2d 103, 107 (Del. 1992).

[23] *Morrison*, 135 A.3d at 73 (internal quotation omitted); *see also Briscoe*, 606 A.2d at 107 (discussing the "searching inquiry" required).

[24] *Boyer v. State*, 2009 WL 3841973, at *1 (Del. Nov. 16, 2009) (internal quotation omitted); *see also Faretta*, 422 U.S. at 835 ("Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." (internal quotation omitted)).

[25] 606 A.2d 103 (Del. 1992).

[26] 674 F.2d 185 (3d Cir. 1982).

[27] *Morrison*, 135 A.3d at 70.

    (3) that the effectiveness of his defense may well be diminished by his dual role as attorney and accused;

    (4) the nature of the charges;

    (5) the statutory offenses included within them;

    (6) the range of allowable punishments thereunder;

    (7) possible defenses to the charges and circumstances in mitigation thereof; and

    (8) all other facts essential to a broad understanding of the whole matter.[28]

"Although it is preferable for the judicial officer to review each of the *Briscoe* factors with the defendant, there is no requirement that they be followed in the same order using the same language."[29] Instead, the record must show that the colloquy "thoroughly advised the defendant of the risks associated with self representation."[30]

    (18) The record in this case reflects that the Superior Court undertook an appropriate inquiry and determined that Norman's decision to waive his right to counsel was knowingly, intelligently, and voluntarily made.[31] At the pretrial conference on September 7, 2023, five days before trial began, defense counsel presented Norman's request that he be permitted to proceed *pro se* at trial, with counsel remaining as standby counsel. Counsel stated that she had discussed with Norman his right to counsel and his corollary right to represent himself; had explained that the court was not required to appoint standby counsel; and had

---

[28] *Id.* at 74.

[29] *Ryle v. State*, 2016 WL 5929952, at *3 (Del. Oct. 11, 2016).

[30] *Id.*

[31] Appendix to Opening Brief at A22-29.

explained that, even if the court did provide standby counsel, Norman would be responsible for preparing for trial, questioning witnesses, and following the rules of evidence. During the ensuing colloquy, the trial judge told Norman that he would be required to follow the rules of evidence and the procedures for direct and cross-examination, jury selection, and making and responding to objections. The court emphasized that Norman would be "going up against a trained attorney" and that Norman's lack of legal training could place him at a "significant disadvantage." The court also ensured that Norman understood the charges against him and the potential penalties.[32] The Superior Court did not err by finding that Norman knowingly, intelligently, and voluntarily waived his right to counsel.[33]

(19) Finally, Norman asserts that "a crucial piece of evidence" was removed from the exhibits that were available to the jury during deliberations. It appears from

---

[32] When the court initially asked Norman what the charges against him were, Norman stated that he was charged with first-degree assault, endangering the welfare of minors, and traffic offenses. *Id.* at A24. Shortly thereafter, the court asked the prosecutor what potential penalty Norman faced. The prosecutor clarified that Norman was charged with second-degree assault and recited the numerous charges and their associated sentencing ranges. The court then asked defense counsel what the total potential penalty was; she responded that it was two to forty-one years. The court then told Norman that if he were convicted on all charges, he would face "a minimum of two up to 41 years of incarceration" and asked him if he understood. *Id.* at A27. Norman responded that he did. *Id.* at A28. Thus, the record reflects that the Superior Court ensured that Norman understood the charges against him and the potential penalties before accepting his waiver of counsel.

[33] *See Ryle*, 2016 WL 5929952, at *3 (independently reviewing colloquy and concluding that defendant's waiver of counsel was knowing and voluntary because the judicial officer explained the charges and potential penalties, stressed how unwise it was to proceed without formal legal training, and told the defendant that the court would not help him with the rules of evidence or courtroom procedure or give him extra time to prepare for trial).

11

the trial transcript that the items at issue were a flash drive and disc that had been marked for identification as defense exhibits 9 and 10.[34]  Although Norman does not explain what information the devices contained or why it was "crucial," the transcript suggests that they contained (i) photos or other information that was duplicative of exhibits that were in evidence[35] and (ii) a video that was not admitted into evidence.[36]  After a close review of the trial transcript, the Court has not found any indication that the prosecution or defense sought to introduce the items marked for identification as defense exhibits 9 and 10 into evidence or used them at any time during the trial.  Thus, it appears that the items were correctly removed from the materials that were available to the jury during deliberations.  We therefore find no reversible error as to this issue.

(20)  We have carefully reviewed the record and conclude that Norman's appeal is wholly without merit and devoid of any arguably appealable issue.  We also are satisfied that Norman's counsel has made a conscientious effort to examine the record and has properly determined that Norman could not raise a meritorious claim in this appeal.

---

[34] Appendix to Opening Brief at A307.

[35] *See id.* at 4:6-10 ("[T]he other things were a flash drive and a disc.  Most of them are already in evidence as State's exhibits.").

[36] *See id.* at 4:11-16 ("The only other thing that was on the flash drive was an MVR video, which is not admitted into evidence and would not be relevant.  It would only be relevant for impeachment purposes.  That would not be an exhibit that would go back to the jury.").

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice