IN THE SUPREME COURT OF THE STATE OF DELAWARE

DJAVON P. HOLLAND,        §
       §    No. 44, 2016
    Defendant Below,        §
    Appellant,        §    Court Below: Superior Court
       §    of the State of Delaware
   v.        §
       §    Cr. ID No. 1404005828A
STATE OF DELAWARE,        §
       §
    Plaintiff Below,        §
    Appellee.        §
       §

Submitted: January 11, 2017
Decided: March 22, 2017

Before **STRINE**, Chief Justice; **HOLLAND** and **SEITZ**, Justices.

Upon appeal from the Superior Court. **REVERSED IN PART**.

Benjamin S. Gifford IV, Esquire (*Argued*), The Law Office of Benjamin S. Gifford IV, Wilmington, Delaware, for Appellant.

Karen V. Sullivan, Esquire (*Argued*), Delaware Department of Justice, Wilmington, Delaware, for Appellee.

**STRINE**, Chief Justice:

This appeal addresses the legal issues raised by the second of two criminal trials over a single incident where Djavon Holland—the defendant—allegedly burst into an apartment, brandished a gun, and demanded money. A brawl unfolded in which Holland and the apartment's occupants—Vanessa Grier, Nemesis Moore, and Semaj Deshields—were all injured. Holland was indicted before the first trial for two counts of Assault First Degree along with twelve other related charges. After trial, Holland was acquitted on both of the Assault First Degree counts, but the jury was unable to reach a conclusion on the other charges.

The various issues in this appeal stem from the State's decision to reindict Holland. The second indictment included both the charges on which the first jury hung, and, for the first time, three counts of Attempted Robbery First Degree. After the second trial, the jury convicted Holland of two of the three counts of Attempted Robbery and the majority of the other charges from the second indictment. On appeal, Holland makes a series of arguments assailing the new charges in the second indictment, and attacks the second trial as a whole on Sixth Amendment grounds.

Holland challenges the State's ability to subject him to the charges in the second indictment that were not in the first indictment on three grounds. First, he argues that the Superior Court incorrectly interpreted 11 *Del. C.* § 208. He contends the statute in fact bars his indictment for Attempted Robbery. Second, he

argues that the State was estopped from proving all the elements of Attempted Robbery of Moore in the second trial. Finally, and most convincingly, he argues that the new charges constituted vindictive prosecution. We reject his first two arguments but find favor with the third.

As to Holland's argument that 11 *Del. C.* § 208 barred the State from indicting him on charges not in the first indictment, the Superior Court interpreted § 208(1)(a), which bars new prosecutions for offenses a defendant could have been convicted of in an earlier prosecution that resulted in acquittal, to bar the second indictment for offenses that were lesser included offenses of the counts previously indicted and therefore that the defendant could have been convicted of at his first trial. The Superior Court then applied § 208(1)(b)(1) to allow the new charges because Attempted Robbery is not a lesser included charge of Assault, and Attempted Robbery met § 208(1)(b)(1)'s requirements that the new charge require proof of facts not required by Assault and was intended to prevent a substantially different sort of crime than Assault. The Superior Court's interpretation of the statute makes more sense than Holland's interpretation. Holland's broader interpretation of § 208(1)(a) would, in essence, bar any new indictment on charges that conceivably could have been brought in the first indictment. That interpretation undercuts the choices the General Assembly made in enacting § 208 and deprives § 208(1)(b)(1) of any real use.

We decline to consider Holland's estoppel argument because he did not properly present it before the Superior Court and the Superior Court's failure to separately assess the case for these estoppel claims was not plainly erroneous. If we did take up Holland's argument that the State cannot prove all the elements of Attempted Robbery because it is estopped from arguing that Holland caused Moore injury or that Holland possessed a firearm, because Holland was acquitted by the first jury of Assault in the First Degree and the related Possession of a Firearm During the Commission of a Felony, though, we would do so within the framework of 11 *Del. C*. § 208. Using the statute, we would find that Holland's acquittals at the first trial did not bar his indictment for Attempted Robbery because they fit within § 208(1)(b)(1)'s exception and do not run afoul of § 208(2).

By contrast, we are persuaded by Holland's argument that the new indictment for Attempted Robbery constitutes vindictive prosecution. The U.S. Supreme Court has held that recharging a defendant with different charges after a first, inconclusive trial poses a "realistic likelihood" of vindictiveness and due process "requires that a defendant be freed of apprehension" of "retaliatory motivation" on the part of prosecutors.[1] Thus, when the State brings different, similarly weighty charges at a second trial, a defendant is entitled to a presumption of vindictive prosecution and does not have to prove that a prosecutor was actually

---

[1] *Blackledge v. Perry*, 417 U.S. 21, 25 (1974) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969)).

improperly motivated in bringing new charges. The State may overcome that presumption by showing legitimate reasons why it was unable to present the new charges at the first trial. Before and during the first trial, the State had abundant evidence that Holland's likely motivation for entering the apartment was that he believed Moore was a drug dealer who he could rob of cash and drugs. Even if Moore testified he was not currently selling marijuana at the time Holland entered the apartment, as the State expected he would at the first trial, the evidence available to the State such as marijuana and baggies found in Moore's bedroom after the melee, Moore's "weed man" nickname, Holland's text messages suggesting he was targeting Moore's apartment for drugs and drug money, and, indeed, Moore's own statement after the incident that it was possible his apartment was targeted because of his reputation, all still would have easily supported an Attempted Robbery charge. Indeed, although the State contests that the issue was fairly raised, it conceded at oral argument that the presumption of vindictive prosecution would apply on these facts.

The State argues that the only reason it recharged Holland was that Moore's testimony that he was a drug dealer at the time of the incident was the critical piece establishing the necessary motive for Holland to rob the apartment. But, nothing in the State's original theory at the first trial suggested Holland was just wandering Moore's neighborhood randomly and just happened to pick Moore's apartment to

4

enter because the number on the door inspired violent thoughts. Rather, the evidence in the State's possession all along supported the inference that Holland knew Moore lived there, that Holland needed cash, and targeted Moore's apartment because he believed Moore was a drug dealer who would have cash and drugs on hand that could be stolen. Therefore, the State fails to show a material change in the facts available to it to overcome the presumption of vindictive prosecution. Because we find that the presumption of vindictive prosecution applies, we reverse Holland's convictions for Attempted Robbery and Home Invasion and the associated counts of Possession of a Firearm During the Commission of a Felony, leaving only the convictions for charges from the first trial standing.

Seeking total victory, Holland seeks to escape all of the convictions he suffered after his second trial by contending that his waiver of his Sixth Amendment right to counsel was not knowing, intelligent, and voluntary. We disagree. His argument requires accepting both that the Superior Court always must mechanistically go through a series of factors, which this Court has regularly held to be examples rather than a mandatory checklist, and also that the Superior Court committed reversible error when it, in part, relied on a colloquy from the first trial—before the same judge, less than a year earlier—when it made its finding in the second trial that Holland's waiver was knowing, intelligent, and

5

voluntary. When, as here, the Superior Court made its decision to allow Holland to proceed *pro se* only after examining Holland on the majority of factors this Court has found relevant and a number of other factors tailored to Holland's particular motivation for representing himself, this Court declines to fault the Superior Court's careful decision.

## I.[2]

On April 8, 2014, Djavon Holland burst into Vanessa Grier's apartment. Grier was at home with her two adult sons, Nemesis Moore and Semaj Deshields. Moore had been living with his mother in the apartment for six to nine years before the incident.[3] Holland pointed a gun at Grier and, according to Grier, said "[g]ive me the money."[4] Moore heard Holland enter and came into the room Grier, Deshields, and Holland were in, and confronted Holland. This turned into a brawl in which Holland shot his gun several times, injuring Deshields and Moore before ultimately being subdued by Grier, Moore, and Deshields. "Responding officers observed that all of the parties were injured."[5] Although Holland was arguably an

---

[2] Unless otherwise noted, the factual background is taken from the record provided by the parties in this appeal.

[3] App. to Appellant's Opening Br. at A088 (Trial Tr., Jan. 23, 2015); *id*. at A066 (Trial Tr., Jan. 22, 2015) (Grier testified Moore lived with her for nine years); *id*. at A074 (Moore testified that he lived with Grier for six to seven years).

[4] *Id*. at A501 (Trial Tr., Sept. 17, 2015). Although the State only elicited this testimony at the second trial, Grier refreshed her recollection using her statement to the police immediately after the incident, a statement that would have been available to the State before the first trial. *Id*. On appeal, Holland concedes that he demanded money. *See* Appellant's Opening Br. at 8.

[5] *Id*. at 9.

armed home invader who sprung upon the occupants of Moore's apartment, the defenders would seem to have likely been deemed the victors of the brawl if it were an MMA title fight. Holland was found by police pinned down under a dinner table, bleeding and moaning[6] and, according to Holland, he suffered the greatest injuries and longest hospital stay of the combatants.[7] This may help explain the comparatively more merciful view the first jury later took of Holland's actions.

The police found 103 grams of marijuana and baggies used for distributing drugs in the apartment. They learned that Moore was known to sell marijuana and was nicknamed the "weed man."[8] The police also recovered text messages from Holland's cell phone indicating he was trying to get money—at least $1,500[9]—as well as text messages from a friend of Holland's suggesting "[t]omorrow might be better. That way, you could catch . . . the order coming . . . out."[10] As part of their investigation, the police interviewed Moore, who told them he sold marijuana in

---

[6] App. to Appellant's Opening Br. at A155–57 (Trial Tr., Jan. 26, 2015); *id*. at A173–74; *see also id*. at A069–70 (Trial Tr., Jan. 22, 2015), *id*. at A097–98 (Trial Tr., Jan. 23, 2015), *id*. at A137–39.

[7] *Id*. at A247 (Trial Tr., Jan. 27, 2015 (Afternoon Session)).

[8] App. to Appellant's Opening Br. at A031 (Search Warrant, April 9, 2014). Moore acknowledged he was aware of the nickname. *Id*. at A086 (Trial Tr., Jan. 23, 2015).

[9] *Id*. at A550 (Trial Tr., Sept. 18, 2015). Although the text messages do not appear to have been used as evidence at Holland's first trial, they were obtained as part of the original investigation. *Id.* at A544, A546.

[10] *Id*. at A551.

the past but no longer.[11]  Moore also maintained in his statement that it was possible Holland entered the apartment because he knew Moore had been a drug dealer.[12]

On July 21, 2014, Holland was indicted for:

- Home Invasion (predicate crime: Assault First Degree and/or Assault Second Degree)
- Assault First Degree as to Nemesis Moore
- Assault First Degree as to Semaj Deshields
- Assault Second Degree as to Vanessa Grier
- Aggravated Menacing as to Vanessa Grier
- Wearing a Disguise During the Commission of a Felony
- Possession of a Firearm by a Person Prohibited
- Possession of Ammunition by a Person Prohibited
- Misdemeanor Criminal Mischief
- Five counts of Possession of a Firearm During the Commission of a Felony

On the morning jury selection was supposed to begin, Holland requested new counsel because he was dissatisfied with his public defender.  The Superior Court determined that a continuance for new counsel was not warranted because the request was made on the day of trial and Holland's lawyer was otherwise ready to proceed.[13]  Instead, the Superior Court asked Holland if he wanted to waive his right to counsel rather than continue with his public defender.  The Superior Court outlined the framework for ensuring that defendants make the choice to waive their right to counsel and represent themselves knowingly, intelligently, and voluntarily,

---

[11] *Id*. at A084 (Trial Tr., Jan. 23, 2015); *id*. at A437 (Trial Tr., Sept. 16, 2015).
[12] *Id*. at A090 (Trial Tr., Jan. 23, 2015).
[13] *Id*. at A044 (Trial Tr., Jan. 21, 2015).

8

invoking the "searching inquiry" framework from the U.S. Third Circuit Court of Appeals decision in *United States v. Welty*.[14] That framework has been adopted by this Court in cases such as *Briscoe v. State*.[15] Using that framework, the Superior Court asked Holland a series of questions about his understanding of the case, experience with the criminal justice system, and education, among other things.[16] Based on that colloquy, the Superior Court confirmed that Holland could proceed *pro se* and appointed Holland's lawyer standby counsel.

At trial, contrary to his earlier statement to the police that he no longer sold marijuana, Moore testified on cross examination that at the time of the incident he made money by selling marijuana.[17] The State later asserted that "[u]p until the eve of trial, the State was not aware that [Moore] was a drug dealer at the time" of the incident.[18] After trial, the jury acquitted Holland of Assault First Degree as to Moore and Deshields and the related Possession of a Firearm During the Commission of a Felony charges. The jury could not reach a verdict on the remaining charges.

After the first trial, the State presented the incident to a new grand jury and that grand jury indicted Holland for:

---

[14] *United States v. Welty*, 674 F.2d 185 (3d Cir. 1982).
[15] 606 A.2d 103, 109 (Del. 1992).
[16] *See infra* Section IV.B. of this Opinion.
[17] App. to Appellant's Opening Br. at A084, A092 (Trial Tr., Jan. 23, 2015).
[18] *Id*. at A382 (State's Response to Defendant's Motion to Dismiss, June 1, 2015).

- Home Invasion (predicate crime: Attempted Robbery First Degree)
- Attempted Robbery First Degree as to Nemesis Moore
- Attempted Robbery First Degree as to Semaj Deshields
- Attempted Robbery First Degree as to Vanessa Grier
- Assault Second Degree as to Vanessa Grier
- Wearing a Disguise During the Commission of a Felony
- Possession of a Firearm by a Person Prohibited
- Possession of Ammunition by a Person Prohibited
- Criminal Mischief
- Five counts of Possession of a Firearm During the Commission of a Felony

Before the second trial began, Holland wrote two letters, one to his attorney and one to the Superior Court, arguing that the new prosecution was "vindictive."[19] Separately, Holland moved to dismiss the charges for Home Invasion, Attempted Robbery, and related Possession of a Firearm During the Commission of a Felony charges on the basis of the prohibition on double jeopardy and 11 *Del. C.* § 208. The Superior Court denied the motion.

On the morning of jury selection for the second trial, Holland indicated that he wanted to represent himself. Holland and his attorney—Anthony Figliola— indicated this was specifically related to Figliola's advice that Holland testify. Holland believed that conducting his own defense was a preferable substitute to

---

[19] *Id*. at A408–09 (*Pro Se* Letter, Sept. 8, 2015); *id*. at A413 (*Pro Se* Letter, Sept. 14, 2015); *see also infra* Section II.C.2 of this Opinion.

taking the stand, based on his experience conducting his own defense in the first trial. The Superior Court then examined Holland about his choice.[20]

The Superior Court concluded that Holland's waiver of his right to counsel had been knowing, intelligent, and voluntary and proceeded to jury selection and pretrial motions. Holland, through Figliola, had made a motion *in limine* to exclude evidence of injury to Deshields and Moore,[21] as well as a motion to reargue the Superior Court's decision that the State could argue, without implicating the Double Jeopardy Clause, that Holland possessed a firearm even though he had been found not guilty of the Assault charges.[22] The Superior Court also invited Holland to "make any argument you wish over and beyond what was set forth in Mr. Figliola's motion."[23] Holland contested his second indictment on grounds the prosecutors "lied."[24] The Superior Court denied Holland's motion for reargument as well as the motion *in limine*.[25]

Holland proceeded to represent himself at trial. The State argued that Holland wanted to rob the apartment because he "knew Nemesis Moore was a drug dealer and [Holland] knew [Moore] sold marijuana for a living, and [Holland]

---

[20] *See infra* Section IV.B of this Opinion.
[21] Motion *in Limine* to Exclude Evidence of Injury, Sept. 4, 2015, *State v. Holland*, Cr. I.D. No. 1404005828A.
[22] App. to Appellant's Opening Br. at A403 (Motion to Reargue, Sept. 4, 2015).
[23] *Id*. at A425 (Trial Tr., Sept. 15, 2015).
[24] *Id*. at A426.
[25] *Id*.

11

knew that around the neighborhood [Moore's] name was 'the weed man.'"[26]  After trial, the jury found Holland guilty of all charges except for Attempted Robbery of Deshields and the related Possession of a Firearm During the Commission of a Felony, and Wearing a Disguise During the Commission of a Felony.

## II.

Holland argues that his second indictment on charges of Attempted Robbery was flawed in three ways.  He argues both that the Superior Court incorrectly interpreted 11 *Del. C.* § 208 because the statute in fact bars Holland's indictment for Attempted Robbery, and also that the State was estopped from arguing in the second trial that Holland's behavior met all the elements of Attempted Robbery of Moore.  Most compellingly, he argues that the second indictment for Attempted Robbery constituted vindictive prosecution.

## A.

We reject Holland's argument that the Superior Court erred in its statutory interpretation when it concluded that 11 *Del. C.* § 208 did not bar the charges of Attempted Robbery of Moore and Deshields.[27]  The relevant part of the statute states:

> Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former

---

[26] *Id.* at A577 (Trial Tr., Sept. 21, 2015).
[27] Issues of statutory interpretation are reviewed *de novo*. *Fountain v. State*, 139 A.3d 837, 840 (Del. 2016); *CML V, LLC v. Bax*, 28 A.3d 1037, 1040 (Del. 2011).

12

prosecution in a court having jurisdiction over the subject matter of the second prosecution under the following circumstances:

(1)    The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in § 207 of this title and the subsequent prosecution is for:

    a.   Any offense of which the defendant could have been convicted on the first prosecution; or

    b.   The same conduct, unless:

        1.   The offense for which the defendant is subsequently prosecuted requires proof of a fact not required by the former offense and the law defining each of the offenses is intended to prevent a substantially different harm or evil; or

        2.   The second offense was not consummated when the former trial began.[28]

This language is almost identical to the Model Penal Code provision.[29]  Holland argued before the Superior Court that § 208(1)(a) barred the State from indicting him for Attempted Robbery of Moore and Deshields, along with the accompanying Possession of a Firearm During the Commission of a Felony charges because he had been acquitted of the Assault charges against them.[30]  Before the Superior Court and this Court, Holland maintains that § 208(1)(a)'s phrase "any offense of which the defendant could have been convicted on the first prosecution" bars any offense that *could* have been indicted in the first prosecution, but was not.  In

---

[28] 11 *Del. C.* § 208.
[29] MODEL PENAL CODE § 1.09.
[30] Appellant's Opening Br. Ex. A at 5.  Holland did not make that argument as to the Attempted Robbery of Grier, though.  *Id.* at 7.

13

contrast, the State argued that § 208(1)(b) allows the new charges because they are different offenses. The Superior Court agreed with the State, observing that "[b]ecause the State did not originally indict on those counts, Defendant could not have been convicted of those offenses under the original indictment, and thus he cannot now claim the protection of subsection (1)(a)."[31] Now, Holland urges this Court to find that the Superior Court incorrectly interpreted § 208.

But, the Superior Court's interpretation of the statute is the one that better gives meaning to each part of the statute in the fashion that the General Assembly adopted it. One of § 208's handful of deviations from the Model Penal Code text is relevant here. The Model Penal Code's § 1.09, which § 208 generally tracks, includes another provision, which says a prosecution is barred if it is for "any offense for which the defendant *should have been tried on the first prosecution*."[32] Delaware's statute, though, omits that provision. Thus, Holland's interpretation would require this Court to read into the statute words explicitly excluded by the General Assembly.

Additionally, the *Delaware Criminal Code with Commentary* does not offer Holland's interpretation the support he claims it does when it offers lesser included offenses as an example of what § 208(1)(a) bars.[33] Holland argues that, because

---

[31] *Id*. at 6.
[32] MODEL PENAL CODE § 1.09 (emphasis added).
[33] DELAWARE CRIMINAL CODE WITH COMMENTARIES 19 (1973).

14

lesser included offenses are offered as an example, they are not the exclusive set of offenses barred by § 208(1)(a) and, therefore, his circumstance is also barred. Even though he is right to observe lesser included offenses are an example rather than a complete set, it does not follow that his situation must therefore be included. Section 208(1)(a)'s language could easily cover other situations than Holland's, for example, a defendant being recharged on charges for which the defendant had actually been indicted in the first case.[34] This illustrates that other examples exist, which don't suffer from the problems associated with Holland's expansive interpretation.[35]

Furthermore, when Holland argues that § 208(1)(a) covers anything that could have been conceivably included in an initial indictment, he doesn't account for what happens to (1)(b). The relevant part of § 208(1)(b) states that a new prosecution is not barred if "[t]he offense for which the defendant is subsequently prosecuted requires proof of a fact not required by the former offense and the law defining each of the offenses is intended to prevent a substantially different harm

---

[34] *See* Oral Argument at 22:34, *Holland v. State*, No. 44, 2016 (Del. Jan. 11, 2017), https://livestream.com/DelawareSupremeCourt/events/6861166/videos/146496660.
[35] The *Model Penal Code Commentaries* also undercut Holland's interpretation. When they address what Delaware adopted as § 208(1)(a), the *Commentaries* observe that the section is meant to "reach those offenses for which the defendant was in actual jeopardy of conviction on the first prosecution" and observe that lesser included offenses, attempt or solicitation of offenses initially charged, or offenses that differ "only in that a less serious injury or risk of injury or a lesser kind of culpability suffices to establish" the offenses all fall within § 208(1)(a)'s scope. 1 MODEL PENAL CODE COMMENTARIES 157 (1985). This explanation is at odds with Holland's broad interpretation of (1)(a).

15

or evil."[36]  If (1)(a) is actually as broad as Holland argues, it is hard to see how there could be any charge that would fit under (1)(b)(1) because (1)(b)(1) plainly allows new charges brought on the same conduct when the charges meet certain criteria.

Finally, Holland argues that the Superior Court's reading makes parts of § 208 incompatible with § 207, which bars prosecutions for "a violation of the same statutory provisions and . . . based upon the same facts as a former prosecution" under certain circumstances.[37]  Although the two sections are closely related, they are not redundant under the Superior Court's interpretation.  Unlike § 207, which deals with a prosecution on the same facts and same statutory provision, § 208(1)(a) addresses a situation where a defendant is being prosecuted on different facts, but for an offense that was part of the events for which the defendant was indicted for in the first prosecution.  Thus, even under the Superior Court's reading, the two sections offer subtly different protections for defendants. For these reasons, we find the Superior Court properly found that § 208 did not bar Holland's indictment for Attempted Robbery.

**B.**

We also reject Holland's argument that the State is estopped from proving all the elements of Attempted Robbery of Moore because Holland was acquitted by

---

[36] 11 *Del. C*. § 208 (1)(b)(1).
[37] *Id*. § 207.

16

the first jury of Assault in the First Degree and the related Possession of a Firearm During the Commission of a Felony.[38] Holland did not raise this argument explicitly before the Superior Court and so this Court reviews the Superior Court's failure to separately assess the case for these estoppel claims for plain error.[39]

If this Court considered Holland's estoppel argument, it would not embrace it, much less find a plain error on the part of the Superior Court in not proactively considering and accepting the theory. Although Holland frames his argument in terms of general principles of estoppel,[40] this Court has recognized that, for criminal prosecutions, the "General Assembly has codified the collateral estoppel doctrine in Title 11, Section 208 of the Delaware Code,"[41] and so this Court considers the estoppel claim within that framework. This is supported by the *Model Penal Code Commentaries*, which observe that the section of the Model

---

[38] Holland only argues this point on the charge related to Moore because he was acquitted of Attempted Robbery of Deshields.

[39] "Only questions fairly presented to the trial court may be presented for review; provided, however that when the interests of justice so require, the Court may consider and determine any question not so presented." *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986). If this Court chooses to consider such questions, it reviews for plain error. *Zhurbin v. State*, 104 A.3d 108, 113 (Del. 2014) ("To warrant review on appeal when the issue has not been fairly presented, there must be 'plain error.' That is, the error complained of must be 'so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process.'" (quoting *Wainwright v. State,* 504 A.2d 1096, 1100 (Del. 1986))); *see Brown v. State*, 36 A.3d 321, 323 (Del. 2012) (reviewing appellant's sentence for plain error).

[40] *See* Appellant's Opening Br. at 24 ("Where a prior judgment of acquittal is based upon a general verdict, a court must 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'").

[41] *Banther v. State*, 884 A.2d 487, 492 (Del. 2005).

17

Penal Code which Delaware codified as § 208(1)(b) "defines the scope of res judicata,"[42] the doctrine of which collateral estoppel is considered a part,[43] as well as the *Delaware Criminal Code With Commentary*, which describes § 208(2) as "giving collateral estoppel effect to a former prosecution."[44]

Here, 11 *Del. C.* § 208(1)(b)(1) allows the indictment for Attempted Robbery. That section allows second prosecutions for the same conduct when "[t]he offense for which the defendant is subsequently prosecuted requires proof of a fact not required by the former offense and the law defining each of the offenses is intended to prevent a substantially different harm or evil."[45] Attempted Robbery in the First Degree requires a jury to find beyond a reasonable doubt that:

(1) The defendant's conduct must have occurred in the course of committing theft, or in an attempt to commit theft; and
(2) The defendant must have used or threatened the immediate use of force on another person . . . ; and
(3) (a) The defendant must have acted with the intent to prevent or overcome the resistance to the taking of the property or to the retention thereof immediately after the taking; or
(3) (b) The defendant must have acted with the intent to compel the owner of the property or another person to deliver up the property; and
(4) (a) In the course of the commission of the commission of the crime or the immediate flight therefrom, the defendant (1) caused

---

[42] COMMENTARIES, *supra* note 35, at 165.

[43] *See, e.g.*, 50 C.J.S. *Judgments* § 926 ("The doctrine of res judicata encompasses four preclusive effects that a final judgment may have upon subsequent litigation . . . bar, merger, direct estoppel, and collateral estoppel.").

[44] DELAWARE COMMENTARIES, *supra* note 31, at 20.

[45] 11 *Del. C.* § 208(1)(b)(1).

physical injury to [the victims] or (2) displayed what appeared to be a firearm . . . .[46]

In contrast, Assault First Degree requires a jury to find beyond a reasonable doubt that: "[t]he defendant caused serious physical injury [to the victim]; . . . [t]he defendant acted intentionally; and . . . [t]he defendant used a firearm to cause the injury."[47] There are thus several facts necessary to prove either offense, which are not common to both. And, assault and robbery are sufficiently distinct offenses. One is against just persons (assault) and the other is against both persons and property for the sake of obtaining that property (robbery). Thus, § 208(1)(b)(1) allows the second indictment.

Alternatively, § 208(2), which bars a second prosecution when the former prosecution "necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense,"[48] allows the second indictment because at the first trial the jury was instructed that the State had to prove Holland intentionally caused "serious physical injury" and used a firearm to cause the injury.[49] Thus, the jury could have determined that Holland did not intentionally cause Moore's injuries or that those injuries did not meet the definition of "serious physical injury." Thus, its conclusion did not necessarily

---

[46] App. to Appellant's Opening Br. at A588 (Trial Tr., Sept. 21, 2015).
[47] *Id*. at A252 (Trial Tr., Jan. 27, 2015 (Afternoon Session)).
[48] 11 *Del. C.* § 208(2).
[49] App. to Appellant's Opening Br. at A252 (Trial Tr., Jan. 27, 2015 (Afternoon Session)).

19

require a determination inconsistent with Holland possessing a firearm or using it to cause injury. Therefore, under either relevant provision of § 208, the State was not estopped from proving all the elements of Attempted Robbery of Moore.

## C.

### *1.*

Holland prevails on his final argument challenging the second indictment, which is that indicting him for Attempted Robbery ran afoul of the federal due process concept of vindictive prosecution. We are confronted with a situation where the State had ample evidence from the beginning to charge Holland with Attempted Robbery, motivated by Holland's perception that Moore was a drug dealer, even if the State also believed Moore would testify he did not currently sell marijuana at the time of the incident. But, the reality is that the State did not charge Attempted Robbery before the first trial and exclusively focused on Assault. Attempted Robbery was only pressed after Holland proceeded *pro se* and was cleared of the most serious charges at his first trial. Although those facts do not implicate 11 *Del. C.* § 208's bars on new prosecutions, they do implicate the related federal due process concept of vindictive prosecution, which "requires that

a defendant be freed of apprehension" of "retaliatory motivation" on the part of prosecutors.[50]

The State argues that the vindictive prosecution argument was not presented to the Superior Court and thus should be reviewed for plain error.[51] Holland contends he raised the argument "repeatedly."[52] We agree with Holland. In this context, "vindictive" does not have the normal meaning of desiring revenge.[53] Rather, vindictive prosecution is a federal due process concept that, generally, on reindictment or retrial, the State may not substitute a more serious charge for one brought in the initial proceedings.[54] This is based on the intuition that prosecutors could dissuade defendants from pursuing their rights by holding as-or-more serious charges for the same behavior in reserve. As the U.S. Supreme Court described in *Blackledge v. Perry*[55]:

> There is, of course, no evidence that the prosecutor in this case acted in bad faith or maliciously in seeking a felony indictment against Perry. The rationale of our judgment in the Pearce case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be free of

---

[50] *Blackledge v. Perry*, 417 U.S. 21, 25 (1974) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969)).

[51] *See supra* note 37.

[52] Appellant's Reply Br. at 5.

[53] "Disposed to seek revenge; revengeful." *Vindictive*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000).

[54] *Johnson v. State*, 396 A.2d 163, 165 (Del. 1978).

[55] 417 U.S. 21 (1974).

apprehension of such retaliatory motivation on the part of the sentencing judge." . . . A person convicted of an offense is entitled to pursue his statutory right to a trial de novo, *without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration*.[56]

In *Johnson v. State*,[57] this Court confronted a case where a defendant was initially indicted for charges that would have resulted in possible penalties of life imprisonment and thirty-four years of prison time.[58] After a mistrial, the defendant appealed, and was later reindicted with charges that would have resulted in mandatory life imprisonment, and seventy-four years of prison time.[59] This Court applied *Blackledge*, and observed that everything *Blackledge* "said about indictment for a felony following an appeal from a misdemeanor conviction is equally applicable to an enlarged indictment following a defendant's successful motion for mistrial."[60] "The only reason appearing in the record for reindicting the defendant on the more serious charges is a statement of the prosecutor . . . that the defendant was undercharged."[61]

The situation here fits within the circumstances recognized in *Blackledge* and *Johnson* as giving rise to a presumption of vindictive prosecution, as the State

---

[56] *Id*. at 27–28 (citations omitted) (emphasis added).
[57] 396 A.2d 163 (Del. 1978).
[58] *Id.* at 165.
[59] *Id*.
[60] *Id*.
[61] *Id*. at 164; *see also State v. Moran*, 820 A.2d 381 (Del. Super. 2002).

22

itself conceded.[62] There is also a human reality at work in this case. The State could not have been pleased to have a defendant like Holland represent himself at trial, be confronted with what seemed to be very strong evidence of inexcusable and unprovoked criminal behavior, and to walk out of court acquitted on multiple major charges and without a conviction on the others. Any prosecutor would feel the sting of that. Because the circumstances therefore invoke the presumption of vindictive prosecution, the State must show there was some legitimate reason why the charges couldn't be presented the first time.[63] Before we reach the merits, though, we explain how we understand Holland to have presented his argument to the Superior Court.

## 2.

Holland first raised the vindictive prosecution argument in two *pro se* letters he wrote to his attorney at the time and the Superior Court—both letters were received before Holland elected to proceed *pro se*. In the first letter, sent to Holland's attorney and entered into the record, Holland stated his concerns that the State knew before the first trial that Moore had a reputation as a drug dealer, contradicting what the State, in Holland's view, asserted after the fact to justify the

---

[62] Oral Argument at 41:33, *Holland v. State*, No. 44, 2016 (Del. Jan. 11, 2017), https://livestream.com/DelawareSupremeCourt/events/6861166/videos/146496660.

[63] 820 A.2d at 388; *see also* 63C AM. JUR. 2D *Prosecuting Attorneys* § 23 ("[O]nce a presumption of prosecutorial vindictiveness is raised, the government must rebut the presumption by showing objective reasons for its charges, such as the discovery of new evidence.").

new indictment on Attempted Robbery.[64] Holland then stated "I don't want to call the State['s] attorney a liar, and I won't, but I will say that it's prosecutorial misconduct and somewhat vindictive" and cited *Johnson v. State*,[65] the main case where this Court addresses the federal due process concept of vindictive prosecution. Similarly, in his letter to the Superior Court, Holland outlined what he thought were the State's misrepresentations about what it knew before the first trial about Moore's reputation for being a drug dealer.[66] He also expressed frustration that his attorney had not raised this argument with the Superior Court. Holland then asked the Superior Court to find some way to "address" the State's alleged misrepresentations to ensure "this is a fair trial and lying of an official of the court of law does not constitute fairness as well as holding back of this information by a lawyer or official."[67] Holland closed the letter, asking "[p]lease stop this maliciousness and vindictiveness, in the interest of justice."[68] In both letters, Holland contrasted the evidence available to the State before the first trial, including evidence the State used at that trial, all tending to show the State was aware Moore had been a drug dealer in the past and, at a minimum, was perceived to be a drug dealer, with the State's statements before the second trial that it was

---

[64] App. to Appellant's Opening Br. at A408–09 (*Pro Se* Letter, Sept. 8, 2015).
[65] 396 A.2d 163 (Del. 1978).
[66] App. to Appellant's Opening Br. at A413 (*Pro Se* Letter, Sept. 14, 2015).
[67] *Id*. at 414.
[68] *Id*. at 415.

not aware Moore was a drug dealer at the time of the incident.[69]  Thus, we understand Holland to mean, when he referred to lying, that he believed the State's indictment on Attempted Robbery was not based on new information, but rather that the State lied when it denied that it could have brought the Attempted Robbery charges with the information it had before the first trial.  Indeed, at oral argument, the State conceded the letters raised a vindictive prosecution claim, but argued that Holland did not renew the claim before the Superior Court when he was actually representing himself.[70]

But, Holland raised his vindictive prosecution argument at trial as well.  On the morning of jury selection, Holland stated that he had a disagreement with his lawyer about a point he wanted to make, that "the prosecutor lied in their motion, and I wanted that addressed to the courts."[71]  The combined reference to the State lying and his lawyer's failure to press the argument refers back to Holland's letter to the Superior Court.[72]

Furthermore, on the first day of trial, the Superior Court invited Holland to "make any argument you wish over and beyond what was set forth in Mr. Figliola's motion for reargument filed September 4."[73]  After some back and forth,

---

[69] *Id*. at A408 (*Pro Se* Letter, Sept. 8, 2015); *id*. at A413–14 (*Pro Se* Letter, Sept. 14, 2015).
[70] Oral Argument at 41:33, *Holland v. State*, No. 44, 2016 (Del. Jan. 11, 2017), https://livestream.com/DelawareSupremeCourt/events/6861166/videos/146496660.
[71] App. to Appellant's Opening Br. at A420 (Trial Tr., Sept. 15, 2015).
[72] *Id*. at A413 (*Pro Se* Letter, Sept. 14, 2015).
[73] *Id*. at A425 (Trial Tr., Sept. 15, 2015).

Holland stated "I wanted to bring up the fact that the prosecution lied in the last motion. I wasn't done rearguing that fact, that they lied. And I wanted my lawyer to bring that up and he didn't bring that up. That basically was my issue."[74] Again, this is a return to his rhetoric in the letters, where the State concedes a vindictive prosecution claim was raised. Changing tack from its original direction that Holland could make any argument above and beyond the motions already on the table, the Superior Court replied that the only argument he would hear at that point was on the motion *in limine*. Holland replied: "if they lying, I can't get a fair trial if they're lying."[75] By lying, we understand Holland to be referring to the State's contention that it did not have evidence to prosecute him for Attempted Robbery at his first trial. Holland reiterated "I don't think lying constitutes a fair trial. For the record, lying doesn't constitute a fair trial. And that's a violation of a fair trial, to be lied about."[76] The Superior Court then observed that Holland could address his concerns on appeal. In combination with the letters, these statements adequately brought the issue of vindictive prosecution to the Superior Court's attention and, in fact, the Superior Court indicated that Holland's argument could be addressed on appeal. Therefore, we consider the argument as one properly presented to the Superior Court.

---

[74] *Id.*

[75] *Id.*

[76] *Id.* at A427.

26

Holland's statements below and elaboration on them with the assistance of counsel before this Court present us with a situation where the defendant was recharged with different, similarly weighty charges at a second trial on essentially the same facts as the State possessed before his first trial. The State argues, at least with respect to Moore, that it did not have an Attempted Robbery case until it learned Moore would testify he was a drug dealer at the time of the incident.[77] But, we do not credit that argument given the large amount of circumstantial evidence that had been available to the State before the first trial all tending to show Moore had a reputation as a drug dealer, and thus, Holland was motivated to target his apartment for the valuable cash and drugs that go along with that occupation. That evidence includes Moore's "weed man" nickname, the marijuana and baggies found in Moore's apartment, Holland's text messages, and Moore's own statement to the police at the time of the incident that he had sold marijuana in the past and he thought it was possible Holland targeted his apartment because he had been a drug dealer. And, as the State's use of the police reports from immediately after

---

[77] However, at oral argument, the State conceded that there had been sufficient evidence before the first trial to prove beyond a reasonable doubt Attempted Robbery of Grier. Oral Argument at 30:38, *Holland v. State*, No. 44, 2016 (Del. Jan. 11, 2017), https://livestream.com/DelawareSupremeCourt/events/6861166/videos/146496660. We respect the candor of this admission.

the incident to refresh Grier's recollection at the second trial shows, Grier told police that Holland said "[g]ive me the money" when he entered the apartment.[78]

As in *Johnson* and *Blackledge*, here "the central figure . . . is the prosecutor."[79] Similarly, the State here had at least a plausible interest in discouraging Holland from proceeding *pro se*, as he did so successfully in the first trial. The prosecutorial vindictiveness concept, though, is "not grounded upon the proposition that actual retaliatory motivation must inevitably exist."[80] Instead, "due process also requires that a defendant be *freed of apprehension* of such a retaliatory motivation . . . ."[81] Thus, the State has the opportunity to demonstrate a legitimate reason why it was unable to present the new charges at the first trial. But, we are not persuaded that the State could have only pressed its Attempted Robbery theory once it knew of Moore's actual testimony, given the large amount of circumstantial evidence available the first trial. Thus, the State fails to overcome the federal due process presumption of vindictiveness and Holland's convictions for Attempted Robbery and Home Invasion and the associated counts of Possession of a Firearm During the Commission of a Felony are reversed. The

---

[78] App. to Appellant's Opening Br. at A501 (Trial Tr., Sept. 17, 2015).

[79] *Johnson*, 369 A.2d at 165 (quoting *Blackledge*, 417 U.S. at 28).

[80] *Id*. (quoting *Blackledge*, 417 U.S. at 28).

[81] *Id*. (quoting *Blackledge*, 417 U.S. at 28) (emphasis added); *see also* 63C AM. JUR. 2D *Prosecuting Attorneys* § 23 ("The vindictive prosecution doctrine seeks not only to alleviate the accused's apprehension of persecution, but also to prevent the chilling of the exercise of legal rights by other defendants who must make their choices under similar circumstances in the future").

convictions of Holland at the second trial on charges that had also been pressed at the first trial remain.

## IV.

## A.

Holland's successful challenge to the new charges in the second indictment does not invalidate all of the convictions resulting from that indictment, because Holland was convicted of several charges that were part of the first trial and on which the first jury hung. Holland therefore attempts to avoid all of his convictions by arguing that the Superior Court erred in allowing him to represent himself at his second trial. If a defendant wants to represent herself *pro se*, she must waive her Sixth Amendment right to counsel knowingly, intelligently, and voluntarily.[82] This Court reviews constitutional claims *de novo*.[83] The Superior Court is "entrusted with the responsibility of ensuring that the decision by a defendant to represent himself is made intelligently and competently"[84] through "'a penetrating and comprehensive examination of all of the circumstances' and only after bringing home to the defendant the perils he faces in dispensing with legal representation."[85] This Court has adopted the framework articulated by the U.S.

---

[82] *Smith v. State*, 996 A.2d 786, 790 (Del. 2010); *Briscoe v. State*, 606 A.2d 103, 107 (Del. 1992).

[83] *Smith*, 996 at 790; *Hall v. State*, 788 A.2d 118, 123 (Del. 2001).

[84] *Briscoe*, 606 A.2d at 107.

[85] *Id*. (quoting *United States v. Welty*, 674 F.2d 185, 189 (3d Cir. 1982)).

Court of Appeals for the Third Circuit for the Superior Court's examination of a

defendant seeking to proceed *pro se*.[86] This framework states:

> The trial court should advise the defendant, for example:
> (1) that the defendant will have to conduct his defense in accordance with the rules of evidence and criminal procedure, rules with which he may not be familiar;
> (2) that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law;
> (3) that the effectiveness of his defense may well be diminished by his dual role as attorney and accused.
> (4) the nature of the charges,
> (5) the statutory offenses included within them,
> (6) the range of allowable punishments thereunder,
> (7) possible defenses to the charges and circumstances in mitigation thereof, and
> (8) all other facts essential to a broad understanding of the whole matter.[87]

Although the U.S. Court of Appeals' language treats the eight factors as examples,

in some later cases this Court has referred to the *Welty* factors as a mandatory set

of items to be discussed.[88] But, even when this Court has used relatively

mandatory language, it has also observed that "[a] knowing and intelligent waiver

can occur without reviewing each of [the *Welty* factors]."[89] In a more recent case

this Court introduced the *Welty* factors as examples of what the Superior Court

---

[86] *Id.*

[87] *Id.* at 108 (quoting *Welty*, 674 F.2d at 189).

[88] *E.g.*, *Smith*, 996 A.2d at 790 ("The trial judge should consider the defendant's background, experience, and conduct, and advise the defendant [of the eight factors]."); *Boyer v. State*, 985 A.2d 389, 2009 WL 3841973, at *1 (Del. Nov. 16, 2009) (TABLE) ("The trial court should advise the defendant [of the eight factors].").

[89] 996 A.2d at 792.

should discuss with the defendant.[90]  This Court has found that a defendant did not effectively waive his right to counsel when the Superior Court did not touch on *any* of the *Welty* factors and therefore did not adequately advise the defendant of "the hazards of self-representation."[91]  Similarly, in *Morrison v. State*,[92] this Court determined that the Superior Court's colloquy with a defendant seeking to proceed *pro se* was insufficient because the Superior Court "failed to inform [the defendant] of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses, possible circumstances in mitigation, and the dangers of the dual roles of being an attorney and the accused."[93]  By failing to do so, the Superior Court "failed to conduct 'a penetrating and comprehensive examination of all the circumstances' in order to find a proper waiver."[94]  Similarly, in *Smith v. State*,[95] the Superior Court reviewed some, but not all of the *Welty* factors, the defendant's "answers were not responsive," and "the trial judge never made a determination on the record that [the defendant] knowingly and voluntarily waived his right to counsel."[96]  In contrast, this Court has also found that a Sixth Amendment waiver was knowing, intelligent,

---

[90] *Morrison v. State*, 135 A.3d 69, 74 (Del. 2016).  But, even in that case this Court observed that "the failure of a trial court to substantially adhere to [the *Welty*] guidelines requires the conviction(s) to be reversed."  *Id.*
[91] *Briscoe*, 606 A.2d at 109.
[92] 135 A.3d 69 (2016).
[93] *Id.* at 74.
[94] *Id.* (quoting *Welty*, 674 F.2d at 189).
[95] 996 A.2d 786 (2010).
[96] *Id.* at 791.

and voluntary even when the Superior Court did not mechanically go through each of the *Welty* factors.[97]

## B.

At the first trial, the Superior Court asked Holland a series of questions as part of its determination that his waiver was knowing, intelligent, and voluntary, beginning with "[s]o do you wish to represent yourself in this case which is going forward today?" Holland replied "Yes."[98] The Superior Court confirmed that Holland filled out and signed the waiver of counsel form with the assistance of his counsel.[99] Then, the Superior Court noted that "[a]ll the charges are listed on that waiver of counsel form," summarized them, and stated the mandatory minimum sentence of thirty-three years, and explained that meant "[t]he Court could not give you any lesser sentence, even if it wanted to."[100] Holland confirmed he understood.[101] The Superior Court then stated the 242 year maximum sentence and Holland confirmed he understood the maximum.[102] The Superior Court then engaged in the following dialogue with Holland:

---

[97] *Hartman v. State*, 918 A.2d 1138, 1140–42 (Del. 2007).
[98] App. to Appellant's Opening Br. at A048 (Trial Tr., Jan. 21, 2015).
[99] The Waiver of Counsel form, which must be signed by the defendant and the Superior Court, states a defendant's charges, maximum total period of incarceration, education, previous experience with the criminal justice system, and contains a series of statements about the hazards of self representation that the defendant has to acknowledge. App. to State's Answering Br. at B1 (Waiver of Counsel Form, Sept. 15, 2015).
[100] App. to Appellant's Opening Br. at A048 (Trial Tr., Jan. 21, 2015).
[101] *Id.*
[102] *Id.*

THE COURT: Do you believe you are competent to represent yourself?

THE DEFENDANT: Yes.

THE COURT: What is the extent of your education?

THE DEFENDANT: I have some college.

THE COURT: And how many years of college do you have and where, which college was that?

THE DEFENDANT: Close to two at PG Community, Prince George County.

THE COURT: All right. I understand you have previous experience in the criminal justice system, in that in 2006, pled guilty to a robbery; is that correct?

THE DEFENDANT: Yes.

THE COURT: Do I understand that you have not participated in a trial before?

THE DEFENDANT: Yes.

THE COURT: Do you realize that most persons who are charged with criminal offenses choose to be represented by a lawyer, and that the constitution guarantees you, as an accused person, the right to a lawyer?

THE DEFENDANT: Yes.

THE COURT: I understand—do you understand that a competent lawyer would be knowledgeable in court—of court proceedings, Rules of Evidence and the law that governs your trial? If this case is tried, do you understand there may be technical issues, which would make it very difficult for you as a nonlawyer to assess?

THE DEFENDANT: Yes.

THE COURT: [D]o you understand that a trial in this case will take place according to the established laws and rules of Court and that you do not have a constitutional right: A, to receive personal instruction from the trial judge on courtroom procedure; and B, to have the trial judge take over the chores for you that would normally be attended to by a trained lawyer as a matter of course if you have legal representation?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you become confused or frustrated, there would be no basis to interrupt the trial nor would it be permission [sic] for you to raise improper objections or representations?

THE DEFENDANT: Yes.

THE COURT: Do you understand if you should fail to conduct yourself with due respect for the laws and rules governing your trial or if you should become disruptive, it is possible that the trial court, that's me, might then appoint a lawyer, that would be Mr. Armstrong, to represent you whether you liked it or not?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the Court in its discretion may appoint a standby lawyer to assist you and offer consultation whether you desire a standby lawyer or not?

\* \* \* \*

THE DEFENDANT: Yes.

THE COURT: Do you understand there are definite hazards in representing yourself?

THE DEFENDANT: Yes.

THE COURT: Nevertheless, do you wish to represent yourself in this case?

THE DEFENDANT: Yes.

THE COURT: And do you believe you are knowingly, intelligently and voluntarily waiving your right to an attorney?

THE DEFENDANT: Yes.

THE COURT: I will also add that if at any time during the trial, you would ask permission to have Mr. Armstrong be admitted as your counsel of record, he would then take over the trial. He would then do whatever things are necessary, opening statements, cross-examination of witnesses, jury selection, closing arguments, et cetera. Do you understand that?

THE DEFENDANT: Yes.[103]

---

[103] *Id*. at A048–49.

When, at the second trial, Holland wanted to represent himself, the Superior Court engaged in another dialogue with him, again confirming Holland wanted to represent himself, that Holland understood the potential length of his sentence, and asked Holland a series of questions:

> THE COURT:  Do you understand that you have the right to be represented by counsel, and that's a constitutional right?
> THE DEFENDANT: Yes.
> THE COURT: . . . .  But do you understand that Mr. Figliola, or any lawyer, is going to be more knowledgeable about court procedure and rules of evidence and the law than someone representing himself, who hasn't been to law school?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that you don't have a constitutional right to receive personal instruction from me as the trial judge on courtroom procedure or to have me take over chores for you that are normally handled by a trained lawyer as part of the representation?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that, if you become confused or frustrated, that would be no basis to interrupt the trial and it wouldn't be any authority for you to raise improper objections or representations?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that, if you should fail to conduct yourself with due respect on the laws and rules governing our trial, or if you should become disruptive, then I might appoint a lawyer, in this case Mr. Figliola, to represent you, whether you liked it or not?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand, as in the last trial, if I allow you to represent yourself—and it's your constitutional right to do so—that I would appoint Mr. Figliola as so-called standby counsel?  He would just be here in Court for the entire trial?  He would never address me.

35

He would just offer you any advice that you may want to ask him about?

THE DEFENDANT: Yes.

THE COURT: Do you understand, as Mr. Figliola said, that whether or not you take the witness stand or not in your defense is totally 100 percent your decision?

THE DEFENDANT: Yes.

THE COURT: Do you understand that Mr. Figliola can give you his best advice as to whether or not you should take the witness stand or not but, ultimately, it's your decision?

THE DEFENDANT: Yes.

THE COURT: I gather from Mr. Figliola that his recommendation to you is that you take the stand but that you have indicated to him that, now at least—you don't have to make this decision until the end of the—until it gets to be the defense case—that, ultimately, that's going to be your decision?

THE DEFENDANT: Yes.

THE COURT: I mean, you could have Mr. Figliola represent you during the trial but still decide not to take the witness stand. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that, if you were to take the witness stand, there would be an out-of-jury hearing to determine what crimes that you previously were convicted of might be admissible for impeachment purposes, meaning going to credibility? That's a standard procedure in criminal trials. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. Well, I think the defendant has—do you believe you have knowingly, intelligently, and voluntarily waived your right to counsel?

THE DEFENDANT: Yes.

THE COURT: All right. *I find that you have knowingly, intelligently, and voluntarily waived your right to counsel. I incorporate by*

36

*reference, finding that I made in the first trial, where a similar colloquy was had.* So, I have signed the waiver-of-counsel form.[104]

## C.

Holland now argues that the Superior Court failed to properly determine that his waiver of counsel was knowing, intelligent, and voluntary because, in essence, the Superior Court integrated some of its findings from the first trial's *pro se* colloquy into its determination at the second trial. Specifically, Holland argues that the colloquy at the second trial was defective because: i) the Superior Court did not confirm that Holland remembered the first colloquy or still understood the considerations covered before it relied on some of its findings; ii) the Superior Court did not specifically state in the second colloquy that the effectiveness of Holland's defense could be diminished by his dual role as defendant and attorney; iii) the Superior Court did not mention the specific statutory offenses Holland was charged with; and iv) the Superior Court did not inform Holland of the range of allowable punishments he was facing.[105] In doing so, he argues that this Court's precedents dictate that the Superior Court must explicitly discuss each *Welty* factor.

But, the Superior Court adequately determined that Holland's waiver of his right to counsel was knowing, intelligent, and voluntary. At the second trial's

---

[104] App. to Appellant's Opening Br. at A420–21 (Trial Tr., Sept. 15, 2015) (emphasis added).
[105] *See* Appellant's Opening Br. at 36.

colloquy, the Superior Court explicitly covered the first and second *Welty* factors.[106] The Superior Court also spent a great deal of time addressing the issue that had seemed to precipitate Holland's desire to proceed *pro se*: when and how he might testify on his own behalf. The Superior Court walked Holland through the ideas that testifying was his choice alone whether he proceeded with his attorney or *pro se*, that Holland's attorney could give him good advice on testifying, and that if Holland took the stand it was conceivable that evidence of crimes he had been convicted of in the past would be admitted for impeachment purposes. Additionally, the waiver of counsel form, which Holland had filled out and the Superior Court referred to throughout the colloquy, listed the charges, which is the fourth *Welty* factor.[107] Already, the colloquy at the second trial was more substantial than those in the cases Holland relies on where the Superior Court barely covered *Welty* factors and did not tailor its colloquy to the specific reasons the defendant wanted to proceed *pro se*.

Furthermore, there is no reason for this Court to exclude the Superior Court's colloquy at the first trial from its analysis of Holland's waiver of his right to counsel at the second trial. Although Holland now objects that the Superior Court did not confirm Holland recalled the first colloquy, both colloquies were

---

[106] "[T]he defendant will have to conduct his defense in accordance with the rules of evidence and criminal procedure, rules with which he may not be familiar" and "that the defendant may be hampered in presenting his best defense by lack of knowledge of the law." *Welty*, 674 F.2d at 189.

[107] App. to State's Answering Br. at B1 (Waiver of Counsel Form, September 15, 2015).

before the same judge, for trials on the same incident, a little over half a year apart. Additionally, the Superior Court explicitly relied on the first colloquy in the second colloquy and Holland, or his attorney, who was participating at that juncture, did not voice confusion at the time even though there was ample opportunity in the colloquy to do so. It is rational, therefore, for a judge who had thoroughly reviewed the *Welty* factors previously with a defendant to carefully tailor the second proceeding by focusing more acutely on certain key factors and carefully giving the defendant information to make sure his waiver was knowing, intelligent, and voluntary. The particular inquiry the Superior Court conducted here reflected such an effort.

To this point, consideration of the Superior Court's colloquy from the first trial helps further demonstrate the robustness of its inquiry into Holland's choice to waive his right to counsel. For one thing, in the earlier colloquy the Superior Court directly addressed the third *Welty* factor, that the effectiveness of Holland's defense might be diminished by his dual role as attorney and accused.[108] The Superior Court also directly addressed the statutory minimums and maximums, which addresses the sixth *Welty* factor. Holland argues that this discussion was improperly integrated into the second colloquy because the charges against him were partially changed between the first and second trials. But, both Assault First

---

[108] The Waiver of Counsel form, signed by Holland before the second colloquy, also addresses this point. *Id*.

39

Degree, the crime for which he was initially charged, and Robbery First Degree, the attempt of which he was charged before the second trial, are classified as Class B Felonies under the Delaware Sentencing Accountability Commission's guidelines and have nearly identical defined maximums and minimums.[109] Although a perfect colloquy would likely have acknowledged the variation, this colloquy's failure to do so, by itself, is not a sufficient reason to reverse the Superior Court.[110] Thus, between the two colloquys, only the seventh *Welty* factor, possible defenses to the charges and circumstances in mitigation, was left unaddressed. Although this Court's pronouncements on how to use the *Welty* factors in this context have been somewhat confusing, the more recent cases emphasize that not every factor has to be specifically addressed in each case. Instead, the *Welty* framework is a guide to use in addressing the Superior Court's ultimate objective here, which is ensuring defendants understand the repercussions and risks of their choice to proceed *pro se*. Here, the Superior Court addressed almost all of the factors and, most importantly, tailored its inquiry to the issue that

---

[109] DELAWARE SENTENCING ACCOUNTABILITY COMMISSION, BENCHBOOK 2015 6, 15, 37–38 (2015). The difference in the minimum amounted to three years.

[110] As the State points out, at the second trial, the Superior Court did explain the maximum and minimum sentences. State's Answering Br. at 33. But that explanation came after the Superior Court found that Holland knowingly, intelligently, and voluntarily waived his right to counsel, so it's difficult to credit that explanation as part of the colloquy. But, in fairness to the State's point, the Superior Court did give Holland the opportunity to confer with his now-standby counsel and his mother after hearing the minimums and maximums. App. to Appellant's Opening Br. at A423 (Trial Tr., Sept. 15, 2015). Furthermore, the maximum was listed and acknowledged by Holland on the Waiver of Counsel form. App. to State's Answering Br. at B1 (Waiver of Counsel Form, Sept. 15, 2015).

was driving Holland's request to proceed *pro se*. The Superior Court's generally careful work here was sufficient to constitute the sort of inquiry this Court requires and thus sufficient for Holland's waiver of his Sixth Amendment right to counsel to be knowing, intelligent, and voluntary.[111]

## V.

To sum up, the Court reverses Holland's convictions for Attempted Robbery and Home Invasion and the associated counts of Possession of a Firearm During the Commission of a Felony because the State failed to overcome the presumption of vindictive prosecution. But, because we find that his waiver of his right to counsel was knowing, intelligent, and voluntary, and reject his other claims, Holland's convictions for Assault Second Degree, the related count of Possession of a Firearm During the Commission of a Felony, and Criminal Mischief stand. The time for filing a motion for rehearing en banc is shortened to five days.[112]

---

[111] Holland, for the first time on appeal, makes another argument attacking the validity of the entire trial. He argues that the Superior Court committed plain error when it failed, on its own motion, to declare a mistrial when Holland became aware of a supplemental DNA report mid-trial, even though the State had disclosed the report six months earlier. At trial, Holland successfully objected to the introduction of the supplemental report, App. to Appellant's Opening Br. at A515 (Trial Tr., Sept. 17, 2015), but then decided he preferred the supplemental report to the original one, *id*. at A519–20 (Trial Tr., Sept. 18, 2015), and consented to its introduction. "[T]his Court has consistently held that a conscious decision to refrain from objecting at trial as a tactical matter is a waiver that will negate plain error appellate review," *Wright v. State*, 980 A.2d 1020, 1023 (Del. 2009), and so we do not consider this argument today.

[112] Supr. Ct. R. 4; *id*. 18.